UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
THE NORTHWESTERN MUTUAL LIFE INSURANCE :
COMPANY,                                                           :   12 Civ. 2514 (PKC)(HBP)
                                                                   :
                                        Plaintiff,                 :
                                                                   :
            - against -                                            :
                                                                   :
STEVEN LITT and TRACY COPPLE-LITT,                                 :
                                                                   :
                                        Defendants.                :
------------------------------------------------------------------- x

## PRE-TRIAL/SUMMARY JUDGMENT MOTION MEMORANDUM OF LAW

**SATTERLEE STEPHENS BURKE & BURKE LLP**
230 Park Avenue
Suite 1130
New York, New York 10169
(212) 818-9200
*Attorneys for Defendant – Steven Litt*

1580009_1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

    A.    The Policy ........................................................................................................3

    B.    Northwestern Consistently Has Recognized Litt as the Policy's Beneficiary ........................................................................................................4

    C.    Northwestern Never Received a Completed Change of Beneficiary Form ............4

    D.    Gil Elmaleh Never Received the Completed Change of Beneficiary Form ...........6

    E.    Receipt of a Change of Beneficiary Form by Gil Elmaleh did not Effectuate a Change of Beneficiary on the Policy ..................................................6

    F.    Decedent did Not Take Steps Necessary to Change the Beneficiary Designation After he was Notified the Designation was Unchanged ....................8

**POINT I** STEPHEN LITT IS THE DIRECT BENEFICIARY ON THE POLICY .....................11

    A.    Legal Standard ................................................................................................11

    B.    Steven Litt Indisputably Remains the Beneficiary on the Policy Because the Change of Beneficiary Form was not Received by Northwestern During Decedent's Life ................................................................11

**POINT II**
DECEDENT DID NOT SUBSTANTIALLY COMPLY WITH THE POLICY'S PROVISIONS CONCERNING CHANGING BENEFICIARIES ...............................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aetna Life Ins. Co. v. Weatherford,*
924 F.2d 1057 (6th Cir. 1991) .................................................................................... 14, 15

*Aisin Seiki Co. Ltd. v. Union Pacific Railroad Company,*
236 F.Supp.2d 343 (S.D.N.Y. 2002) ................................................................................ 14

*Conn. Gen. Life Ins. Co. v. Boni,*
368 N.Y.S.2d 1 (App.Div. 1975) ............................................................................... 13, 14

*D'Amico v. City of New York,*
132 F.3d 145 (2d Cir. 1998) ............................................................................................. 11

*Haskins Trucking Inc. v. Goodyear Tire & Rubber Co.,*
No. 07-0585, 2008 WL 1775272 (W.D. La. Apr. 17, 2008) ............................................ 15

*John Hancock Life Ins. Co. v. McManus,*
247 A.D.2d 513, 669 N.Y.S.2d 320 (2 Dept.,1998) ......................................................... 16

*K.C. ex rel Rick v. Upland Unified Sch. Dist.,*
No. EDCV 06-1314, 2008 WL 4553212 (C.D. Cal. Oct. 7, 2008) ................................... 15

*McCarthy v. Aetna Life Ins. Co.,*
704 N.E.2d 557 (N.Y. 1998) ............................................................................................ 13

*Sun Life Assur. Co. of Canada (U.S.) v. Gruger,*
2007 WL 4457771, at *18, 2007 U.S. Dist. LEXIC 92141, at *56 (S.D.N.Y. 2007) .. 13, 16

*William Penn Life Ins. Co. of New York v. Viscuso,*
569 F.Supp.2d 355 (S.D.N.Y. 2008) .......................................................................... 13, 16

*Zelnik v. Fashion Institute of Tech.,*
464 F.3d 217 (2d Cir. 2006) ............................................................................................. 11

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure, Rule 56 .............................................................................. 1

Local Rule 56.1 ........................................................................................................................ 1

Defendant Steven Litt ("Litt") submits this Memorandum of Law in Support of his Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 56.1, or, if summary judgment is denied, as a pre-trial brief.

## PRELIMINARY STATEMENT

Litt indisputably is the named beneficiary on his now deceased twin brother David M. Litt's ("Decedent") life insurance policy with The Northwestern Mutual Life Insurance Company ("Northwestern")(the "Policy"), and is entitled to summary judgment awarding him the death benefit on the Policy.[1]

From inception to date, Northwestern has considered Litt the Policy's named beneficiary. Defendant Tracy Copple-Litt ("Copple-Litt"), however, claims that a Change of Beneficiary Form naming her as the beneficiary on the Policy (the "Form") was sent by Decedent to Northwestern in 2005. She will proffer an alleged one page fax confirmation from Lehman Brothers (the "Confirmation") to support her claim that Northwestern received the Form. The telephone number on the Confirmation, however, indisputably was not a Northwestern fax number. Not surprisingly, Northwestern testified that it never received the Form prior to Decedent's death.

The Policy provides that a change of beneficiary is only effective if a completed and satisfactory change of beneficiary form is received by Northwestern's Home Office prior to a policy owner/insured's death. Here, Northwestern indisputably did not receive the Form until after the Policy owner/insured Decedent's death. Accordingly, Decedent did not comply with

---

[1] Northwestern is no longer a party in this case. It commenced this action, was dismissed and the proceeds of the Policy are on deposit with the Court.

1

the Policy's change of beneficiary provisions, Litt remained the beneficiary, and Copple-Litt is not entitled to the death benefit.

Copple-Litt alternatively alleges that the Form was faxed to the Policy's servicing agent, Gil Elmaleh ("Elmaleh"), rather than Northwestern. The Policy, however, indisputably provides that Northwestern's Home Office – not a servicing agent -- must receive the Form prior to the Owner/Insured's death.[2]

Apparently recognizing that faxing the Form to Elmaleh does comply with the Policy's change of beneficiary provisions, Copple-Litt alternatively alleges that she is entitled to the death benefit because sending the Form to Elmaleh substantially complied with the Policy's change of beneficiary provisions. Elmaleh, however, has denied receiving the Form, and the Confirmation does not raise a triable issue of fact concerning whether Elmaleh received the Form because the Confirmation is inadmissible. The Confirmation has not been authenticated by anyone from Lehman Brothers; and it is unclear, given that the Confirmation has no attachments, what documents even were faxed to Elmaleh. Absent evidence that Elmaleh received the Form, Copple-Litt's only evidence of substantial compliance is that Decedent filled out the Form. As discussed below, it is well settled that merely completing a change of beneficiary form is insufficient to invoke the doctrine of substantial compliance.

Further, even if Copple-Litt could prove that Elmaleh received the Form in 2005, in order to prevail on her theory of substantial compliance, Copple-Litt still must show that Decedent took all steps within his power to change the beneficiary on the Policy. The undisputed record conversely shows that, despite being notified on multiple occasions that the Policy's beneficiary designation was not changed to Copple-Litt in 2005, Decedent did not take

---

[2] Additionally, Elmaleh's contract with Northwestern states that he cannot change the terms of the Policy.

2

all steps within his power to change the beneficiary on the Policy. For example, despite receiving six Northwestern annual Policy statements informing Decedent that his brother was still the beneficiary on the Policy, Decedent did not file a new Form. Additionally, despite telling Elmaleh in 2007 that he wanted to change the beneficiary to his wife and shortly thereafter being sent a change of beneficiary form, he did not file a new Form. Further, in 2008, the Decedent acknowledged in email correspondence with Elmaleh that his beneficiary designation was not up to date, and yet took no further actions to update the designation or to file a Form. Accordingly, undisputed evidence shows that Decedent did not take all steps within his power to change the beneficiary on the Policy and, as a matter of law, did not substantially comply with the Policy's change of beneficiary provisions. As a result, Litt should be granted summary judgment and awarded the death benefit on the Policy.

## STATEMENT OF MATERIAL FACTS

Litt respectfully refers the Court to the accompanying Affidavit of Walter A. Saurack, sworn to January 9, 2013, with exhibits annexed thereto (the "Saurack Aff."), and the accompanying Affidavit of Steven Litt, sworn to on January 9, 2013 (the "Litt Aff."), for a complete statement of facts relating to this application.

### A. The Policy

On or about June 30, 2003, Decedent applied for life insurance from Northwestern. *See* designations of deposition transcript of Northwestern representative Gail C. Junemann annexed to the Saurack Aff., at Exhibit A (the "Junemann Tr.") at 17:16-18:3 and Exhibit C. The Application identified Litt as the intended direct beneficiary of the Policy. *See* Saurack Aff., Exhibit C, at § 15 and Junemann Tr., 18:4-7. Northwestern subsequently issued an individual life insurance Policy bearing no. 16 579 951 to Decedent, which names Litt as the sole

beneficiary. *See* Junemann Tr., 14:10-17:7. Saurack Aff., Exhibit D. The death benefit on the Policy was $1,411,369. *Id.*

### B. Northwestern Consistently Has Recognized Litt as the Policy's Beneficiary

Litt's brother died on September 11, 2011. *See* Junemann Tr., 17:11-12 and designations from the transcript of the October 26, 2012 deposition of Copple-Litt, annexed to the Saurack Aff. at Exhibit E (the "Copple-Litt Tr."), 22:7-9. At the time of Decedent's death, Northwestern considered Litt the beneficiary of the Policy. *See* designations from the transcript of the November 20, 2012, deposition of Northwestern representative Deborah Luther (the "Luther Tr.") annexed to the Saurack Aff. at Exhibit F, 12:14-18. *See also* Luther Tr., 13:14-14:25 and Exhibit G to the Saurack Aff.; Luther Tr., 16:14-17:21 and Saurack Aff., Exhibit H; and Luther Tr., at 17:22-25 and Exhibit I to the Saurack Aff. To this day, Northwestern considers Litt the beneficiary on the Policy. *See* Junemann Tr., 30:13-15; Luther Tr., 22:5-12.

The death benefit for the Policy, however, has not been paid to Litt because on September 29, 2011 (*i.e.* after Decedent's brother died) Copple-Litt's attorney alleged in a letter to Northwestern that Decedent submitted the Form to Northwestern in September, 2005. Copple-Litt alleges that Decedent consequently amended the Policy in order to name Copple-Litt as the beneficiary. *See* Junemann Tr., 18:13-19:8 and Exhibit J to the Saurack Aff.

### C. Northwestern Never Received a Completed Change of Beneficiary Form

Northwestern indisputably never received the allegedly completed Form. On the bottom of the first page of the Change of Beneficiary Form is a section designated "FOR HOME OFFICE USE," containing a space for the signature of a Northwestern representative to acknowledge receipt of the Change of Beneficiary Form, and a space for the date on which the

acknowledgement is made. Neither of these spaces is filled out on the form sent by Copple-Litt's attorney, Mr. Peskin, to Northwestern after the Decedent's death. *Id.*

At Northwestern's deposition, Ms. Junemann testified:

Q: [A change of beneficiary] is effective at a date when it's signed but also has to be signed by someone at Northwestern in this space?

A: Yes.

Q: And if it's not, the change is not effective?

A: Correct.

Q: And how do you know that?

A: It's not endorsed. I didn't see it until after the death.

*See* Junemann Tr., 21:24-22:10. Ms. Junemann further testified:

Q: Was this change of beneficiary ever recorded at Northwestern?

A: No.

*Id.* at 24:3-5.[3]

Copple-Litt believes that the Change of Beneficiary Form was sent to Northwestern based on an alleged September 29, 2005 facsimile Confirmation (Saurack Aff., Exh. K) that she allegedly also found in the Decedent's files after his death (Copple-Litt Tr., 45:2-4).[4] Copple-Litt, however, admitted that she had no personal knowledge of whether the facsimile number of "9149464969" identified in confirmation as the recipient of the facsimile belonged to Northwestern. *Id.* at 44:22-25.

---

[3]Copple-Litt testified that she has never seen, in the "tons and tons" of Northwestern papers she located in the Decedent's files, a copy of the Change of Beneficiary Form which was acknowledged by Northwestern. See Copple-Litt Tr., Saurack Aff., Exhibit E at 37:9-38:9; 45:8-12.

[4]Copple-Litt, to the undersigned's knowledge, has not sought to take the deposition of Lehman Brothers or taken any steps to authenticate the Confirmation as a Lehman Brothers' business record. Saurack Aff., ¶13.

5

1580009_1

### D. Gil Elmaleh Never Received the Completed Change of Beneficiary Form

Copple-Litt now claims that the fax number identified in the Confirmation as the recipient of the fax belongs to the Blumberg Group, where Elmaleh, the servicing agent for the Policy, worked. Elmaleh, however, has admitted in a sworn statement that he, and to his knowledge no one at the Blumberg Group, ever received a copy of the allegedly completed Change of Beneficiary Form. A copy of Gil Elmaleh's Affidavit, sworn to on October 23, 2012 ("Elmaleh Aff."), is annexed to the Saurack Aff. as Exhibit L. Within his affidavit, Elmaleh states:

> Prior to October 9, 2012, I had never seen the executed Form. I (and to my knowledge Blumberg Group) never received the purported fax confirmation of the purportedly executed form.
>
> If I had received such form, I would have immediately filed the Form with the home office consistent with my regular practice.

*See* Elmaleh Aff., ¶¶12 and 13.[5]

### E. Receipt of a Change of Beneficiary Form by Gil Elmaleh did not Effectuate a Change of Beneficiary on the Policy

Even if Copple-Litt could establish that Elmaleh received a facsimile from Lehman Brothers on September 29, 2005 (despite Elmaleh's sworn affidavit to the contrary) and that the transmission received was the completed Change of Beneficiary Form (even though there is no evidentiary support for this proposition), Copple-Litt's claim nonetheless fails. The Policy and the testimony of Northwestern establish that a change of beneficiary form must be received by Northwestern's Home Office in order to become effective and that a change can only be made while the insured is living.

---

[5] Tellingly, despite seeking and receiving an extension of the discovery deadline in this action in order to take the deposition of Elmaleh, Copple-Litt chose not to do so.

1580009_1

Section 10.2 of the Policy specifically provides that a "change of beneficiary" is "made *on receipt at the Home Office* of a written request that is acceptable to the Company" and that where, as here, the Insured was the Owner of the Policy, a change of beneficiary can only be made "while the Insured is living." Saurack Aff., Exh. D, Section, 10.2 (emphasis supplied). The Policy does not state that receipt by a servicing agent is sufficient to effectuate a change of a beneficiary. *See* Policy, Exhibit D at § 10.2. It says that the Home Office has to receive the Form. *Id.*

Ms. Junemann of Northwestern confirmed the terms of the Policy at her deposition, testifying:

> Q: In order for the completed form to be acceptable, it has to be received by the home office at the time that the insured is alive, correct?
>
> A: Yes.

See also Junemann Tr., 41:6-9 ("Q. If the insured is the owner, then the change in designation has to be made while the insured is alive, correct? A. Correct."); 36:22-24 (Q. "So a change of beneficiary form had to be received prior to the date of his death? A. Yes.").

Similarly, Ms. Luther testified as follows:

> Q: And was there any reason why Northwestern did not consider this form received by September 29, 2011 to be effective so far as changing the beneficiary on the Decedent's policy?
>
> A. Based on the contract language, a beneficiary **designation has to be received in the home office** in a format that's acceptable for recording.
>
> Q. So the – the change of beneficiary form had to be received by Northwestern while the insured was living?
>
> A. Correct.
>
> Q. Now when you testified that the change of beneficiary form has to be received by Northwestern while the insured/owner was living, are you referring to Section 10.2 on page 14?

7

A.   Yes, I am.

Luther Tr., 19:24-20-17 (emphasis supplied)(citing Exhibit D and J hereto); *see also* Lurther Tr., 28:11 – 13 ("Based on the contract, it needs to be received in the home office prior to the insured's death.").

Further, the Policy says "[a] change in the policy is valid only if it is approved by an officer of the Company." *Id.*, Section, 1.2.  Similarly, Elmaleh's Full-Time Special or Soliciting Agent's Contract with Northwestern (the "Agency Contract"), a copy of which is annexed to the Elmaleh Aff. as Exhibit G, makes it clear that the Decedent's alleged facsimile of the Change of Beneficiary Form to Elmaleh is insufficient for purposes of changing the beneficiary on the Policy.  The very first page of the Agency Contract provides:

> **Alteration of Policies** – Agent shall have no power, personally or on behalf of the Company or First Party, to waive any forfeiture or to alter or discharge or waive any of the terms and conditions of any policy or contract.

*See also* Junemann Tr., 48:13-16 ("Q. Did Elmaleh during the period in which he was a servicing agent have the power or authority to change the beneficiary on the policy. A. No.").  Accordingly, Elmaleh could not have effectuated the change of beneficiary had he received the Form.  The Form had to be received by Northwestern's Home Office while Decedent was alive.

### F.   Decedent did Not Take Steps Necessary to Change the Beneficiary Designation After he was Notified the Designation was Unchanged

In addition to failing to comply with the requisite steps necessary in order to change the beneficiary on the policy in 2005 (*i.e.* forwarding the Change of Beneficiary Form to Northwestern's Home Office), Decedent plainly did take any steps to change the beneficiary on

8

the Policy from Litt to Copple-Litt after being notified on multiple occasions that the beneficiary designation had not been changed.

Approximately six (6) years elapsed between the alleged execution of the Change of Beneficiary Form in September of 2005 and Decedent's death in September 2011. During that period, Decedent indisputably received six (6) Life Insurance Annual Policy Statements. Saurack Aff., Exh, M. Each and every annual statement indicates on the first page "Direct Beneficiary: Steven Litt." *See* Saurack Aff., Exhibit M; Junemann Tr., 63:1-64:24. Each of the six (6) annual statements advised the Decedent on the first page, "**For Changes to Your Personal Information (Address, Owner, Beneficiary) or Service Questions** Call: 1-800-388-8123." *See* 2005, 2006, 2007, 2008, 2009 and 2010 Northwestern Life Insurance Annual Policy Statements, Exhibit M to Saurack Aff. (emphasis in original). Thus, the Decedent had at least six opportunities to review the vital information regarding the Policy, including the named beneficiary, and to call Northwestern if he wanted to change the named beneficiary. Instead, he indisputably did nothing.

Additionally, on October 4, 2005, or five (5) days after the Decedent allegedly faxed the executed Change of Beneficiary Form to Elmaleh, Northwestern sent an October 4, 2005 letter to the Decedent stating:

> Thank you for notifying us of your wish to change the beneficiary designation on your contract. To help us make this change, please complete the enclosed form and return it in the postage-paid envelope.
>
> As soon as we receive the form, we'll change the designation and send you an acknowledgment to confirm the change. **Your designation will remain unchanged until we hear from you**.

*See* October 4, 2005 letter, Exhibit N (emphasis added) and Junemann Tr. 59:1-61:19. In response to this request for an executed change of beneficiary form as well as the warning that

9

the change would not take effect until such time as the completed form was received by Northwestern, Decedent took no action. *See* Junemann Tr., Exhibit A at 62:15-17. Further, it is undisputed that Decedent never responded to this letter and never was sent an acknowledgment letter. Junemann Tr. 34: 10-12; 62:15-17.

Then, during a November 30, 2007 meeting with Elmaleh, Decedent asked him to change the beneficiary on the Policy to Copple-Litt. See Elmaleh Aff., ¶ 8. On the same day, Elmaleh's assistant, Sarah Miller sent an email to Decedent forwarding him a change of beneficiary form. Id. ¶ 9 and Exhibit C. Then, Elmaleh sent an email to Decedent confirming that his assistant had sent him the requested change of beneficiary form. Id. and Exhibit D to the Elmaleh Aff. Despite numerous attempts by Elmaleh to follow-up with the Decedent regarding his request to change the beneficiary on the Policy, Decedent was unresponsive. Id. ¶ 11. These facts alone demonstrate that as of November 30, 2007 Decedent was well aware of the fact that Copple-Litt had not been substituted as the Policy's beneficiary and yet indisputably took no steps to change the beneficiary on the Policy.

Finally, on February 6, 2008, Decedent sent Elmaleh an e-mail with an attachment concerning updating his information regarding the Policy. In response to the question "[a]re your beneficiary designations up to date," Decedent responded "no." Elmaleh Aff., ¶14 and Exhibit F. Again, despite his acknowledgement that the beneficiary designation on the Policy (Steven Litt) was not updated, he indisputably took no action to change the Policy to name Copple-Litt as the beneficiary.

It is not at all surprising that Decedent never changed the beneficiary on the Policy to Copple-Litt. If summary judgment is denied, the Court in assessing Decedent's intent to change the beneficiary on the Policy should consider evidence that Copple-Litt and Decedent

10

enjoyed, at best, a tumultuous six (6) year marriage. Copple-Litt admits that for the majority of the time that they were married, including at the time of the Decedent's death, Decedent and Copple-Litt did not live together, *see* Copple-Litt Tr., Exhibit E at 19:24 – 21:24; 22:10-14, and that that Decedent did not ask her to attend family functions and events, including visiting Decedent's ill mother and his father's funeral, *id.* at 29:8-31:11.

## ARGUMENT

## POINT I

### STEPHEN LITT IS THE DIRECT BENEFICIARY ON THE POLICY

**A.** **Legal Standard**

"Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.*; *see also Zelnik v. Fashion Institute of Tech.*, 464 F.3d 217, 224 (2d Cir. 2006) (Observing that, while a court must draw all inferences in favor of the non-moving party, "with respect to a properly supported summary judgment motion, the party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks omitted)).

**B.** **Steven Litt Indisputably Remains the Beneficiary on the Policy Because the Change of Beneficiary Form was not Received by Northwestern During Decedent's Life**

The terms of the Policy with respect to the requirements necessary to effectuate a change of beneficiary direct that a change of beneficiary form must be filed with Northwestern's

Home Office while the owner is living. Section 10.2 of the Policy specifically provides that a "change of beneficiary" is "made on receipt *at the Home Office* of a written request that is acceptable to the Company" and that where, as here, the Insured was the Owner of the Policy, a change of beneficiary can only be made "while the Insured is living." Saurack Aff., Exh. D, Section, 10.2 (emphasis supplied).

Copple-Litt now claims that receipt of the Form by Elmaleh during Decedent's lifetime is sufficient to effectuate a change of beneficiary on the Policy. The Policy, however, does not state that receipt by a servicing agent is sufficient to effectuate a change of a beneficiary. Saurack Aff., Exh. D, Section, 10.2. It says that the Home Office has to receive the Form. *Id.* Further, the Policy says the contrary: "[a] change in the policy is valid only if it is approved by an officer of the Company." *Id.,* Section, 1.2. Similarly, Mr. Elmaleh's contract to act on behalf of Northwestern states that he is not an agent of Northwestern and that he has "no power personally, or on behalf of [Northwestern] to…alter or discharge or waive any terms and conditions of any policy or contract." Elmaleh Aff., ¶15, and Exh. G. Accordingly, per the terms of the Policy, Copple-Litt could not have been named the beneficiary because the Form indisputably was not received by Northwestern while Decedent was alive, and Litt, therefore, should be awarded summary judgment.

### POINT II

### DECEDENT DID NOT SUBSTANTIALLY COMPLY WITH THE POLICY'S PROVISIONS CONCERNING CHANGING BENEFICIARIES

Copple-Litt undoubtedly also will attempt to invoke the doctrine of substantial compliance to argue that Decedent substantially complied with the Policy's change of beneficiary provisions by sending the Form to Elmaleh in 2005. There is no admissible evidence, however, that Elmaleh recieved the Form. Further, Copple-Litt cannot prove

12

1580009_1

substantial compliance because Decedent failed to take all steps within his power to change the beneficiary designation to Copple-Litt, despite being notified on multiple occasions that the change had not been made and acknowledging that his beneficiary designations were not updated.

New York has adopted the doctrine of substantial compliance to determine whether a contractual condition has been constructively satisfied. "An insurance policy's change of beneficiary provisions exist not only to protect the insurer from multiple claims," but also to serve "the essential goal of preventing the courts and parties from speculating regarding the wishes of the deceased." *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F.Supp.2d 355, 365 (S.D.N.Y. 2008)  However, "[u]nder the doctrine of substantial compliance, exact compliance with the terms of the policy will be excused, and a change of beneficiary given effect, where the insured took 'an affirmative act or acts to accomplish a change of beneficiary, and these affirmative act or acts ... accomplished all that it was in [the insured's] actual power to do to change beneficiaries.'" *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F.Supp.2d at 366 (citing *Sun Life Assur. Co. of Canada (U.S.) v. Gruger*, 2007 WL 4457771, at *18, 2007 U.S. Dist. LEXIC 92141, at *56 (S.D.N.Y. 2007); *see also McCarthy v. Aetna Life Ins. Co.*, 704 N.E.2d 557 (N.Y. 1998). The intent of the insured "is the key to the inquiry, but proof of intent alone is not enough: the insured's intent must have been thwarted by circumstances beyond his or her control." *Id. (citing Schoenholz v. N.Y. Life Ins. Co.*, 234 N.Y. 24, 29-30, 136 N.E. 227 (1922); *Conn. Gen. Life Ins. Co. v. Boni*, 368 N.Y.S.2d 1, 3 (App.Div. 1975). The insured must have done "all that was reasonably possible to do to show his intention" or have made "every reasonable effort to comply with the policy requirements." *McCarthy*, 92 N.Y.2d at 440.

13

For example, in *Connecticut General Life Ins. Co. v. Boni*, the First Department considered whether substantial compliance should be applied where the insured executed a change of beneficiary form in 1963, but at the time of insured's death in 1974, the change of beneficiary form had not been filed with the home office of the insurer. 368 N.Y.S.2d 1, 3 (1st Dept. 1975). Similar to here, it was claimed that change-of-beneficiary form was delivered to an intermediary who would then deliver the form to the insurance company. As is the case here, the alleged agent submitted an affidavit stating that he had not received the form. *Id.* The First Department concluded that the record was insufficient to raise any triable issue of fact concerning the decedent's attempted substantial compliance.

Here, Copple-Litt similarly cannot prove substantial compliance. First, mere execution of a Form is insufficient in and of itself to establish substantial compliance. *See Aetna Life Ins. Co. v. Weatherford*, 924 F.2d 1057 (6th Cir. 1991) (the completion of form is an "unexecuted intention" where it never mailed and did not meet the standard of substantial compliance). Accordingly, absent proof that the Form was sent to Northwestern or Elmaleh, rather than just executed by Decedent, Copple-Litt's substantial compliance claim fails as a matter of law.

Copple Litt cannot proffer admissible evidence that Decedent faxed the completed form to Northwestern or Elmaleh. Northwestern indisputably never received the Form, and the only evidence that Elmaleh received the Form is the Confirmation, which is inadmissible.

A party opposing summary judgment must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact. *Aisin Seiki Co. Ltd. v. Union Pacific Railroad Company*, 236 F.Supp.2d 343 (S.D.N.Y. 2002). The Confirmation has not been authenticated or established as a business record of Lehman Brothers and is rank

14

hearsay. Courts regularly deny the admission of unauthenticated documents such as the Confirmation. *See Haskins Trucking Inc. v. Goodyear Tire & Rubber Co.,* No. 07-0585, 2008 WL 1775272, at *2 (W.D. La. Apr. 17, 2008)(Striking copies of photographs attached to fax cover sheet because they were unauthenticated, not accompanied by sworn affidavit, and where fax sender and author of cover page description was unclear). *See also K.C. ex rel Rick v. Upland Unified Sch. Dist.,* , No. EDCV 06-1314, 2008 WL 4553212, at *2 (C.D. Cal. Oct. 7, 2008) (Court refuses to take judicial notice of the facsimile cover sheet or the transmission confirmation page). No fax cover sheet has been produced, it is unclear what five pages were allegedly faxed from Lehman Brothers, and it is unclear what a Lehman Brother fax Confirmation even indicates in absence of testimony from Lehman Brothers.[6] Accordingly, not having proffered any admissible evidence that the Form was sent to Northwestern or Elmaleh, Copple Litt's substantial compliance claim must fail as a matter of law. *Aetna Life Ins. Co. v. Weatherford,* 924 F.2d 1057 (6th Cir. 1991)

Further, even if Copple-Litt could prove that Decedent faxed the Form to Elmaleh in 2005, Decedent's actions do not satisfy the substantial compliance doctrine. Decedent had multiple opportunities over the years to change the beneficiary and update the Form. But Decedent chose not to act. His failure to act includes the following: (i) Decedent indisputably failed to submit the Form required to change the beneficiary on the Policy after he was notified on **six (6)** occasions in annual Northwestern Policy statements that his brother was still the designated beneficiary; (ii) Decedent did not file a new Form even though approximately a week after he allegedly faxed the Form to Elmaleh, Northwestern sent him a letter stating that it had not received the completed Form; (iii) Decedent did not file a new Form even though he knew

---

[6] In any event, Elmaleh testified that he never received out the filled out form. Elmaleh Aff., ¶12.

15

from the same letter that he was supposed to receive an acknowledgment letter confirming the change of beneficiary, but he indisputably never received one; (iv) Decedent took no further action after he requested and received a change of beneficiary Form in order to change the beneficiary to his wife in 2007 and finally, (v) Decedent did nothing even after he admitted in a February 6, 2008 e-mail to Elmaleh that his beneficiary designations were not up to date. All of these facts are undisputed and, as a matter of law. Decedent plainly did not accomplish "all that it was in [the insured's] actual power to do to change beneficiaries.'" *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F.Supp.2d at 366 (citing *Sun Life Assur. Co. of Canada (U.S.) v. Gruber*, 2007 WL 4457771, at *18, 2007 U.S. Dist. LEXIS 92141, at *56 (S.D.N.Y. 2007). See *John Hancock Life Ins. Co. v. McManus*, 247 A.D.2d 513, 669 N.Y.S.2d 320 (2 Dept.,1998)(Although the insured was advised that the initial form she returned was unacceptable and a new form was sent to her to complete, she failed to fill out and return the new form in the month before her death, even though completion of the new form was within her power to accomplish). Decedent was well aware that the beneficiary designation had not been changed to Copple-Litt, but indisputably failed to take all steps within his power to effectuate the change. Under these circumstances, there exists no triable issue of fact, and Litt should be granted summary judgment and awarded the death benefit on the Policy.

Dated: New York, New York
       January 11, 2013

                          SATTERLEE STEPHENS BURKE & BURKE LLP

                          By: _____/s/Walter A.Saurack_____
                                Walter A. Saurack
                          230 Park Avenue – Suite 1130
                          New York, New York  10169
                          (212) 818-9200
                          *Attorneys for Defendant – Steven Litt*

1580009_1