UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
THE NORTHWESTERN MUTUAL LIFE INSURANCE :
COMPANY,                                :         12 Civ. 2514 (PKC)(HBP)
                                        :
                        Plaintiff,      :
                                        :
        - against -                     :
                                        :         **AFFIDAVIT OF**
STEVEN LITT and TRACY COPPLE-LITT,      :         **STEVEN LITT**
                                        :
                        Defendants.     :
------------------------------------------------------------------ x

STATE OF OREGON )
                : ss.:
COUNTY OF LANE  )

        STEVEN LITT, being duly sworn, deposes and says:

        1.     I submit this affidavit in support of the following: (i) my motion for an Order, pursuant to Federal Rule of Civil Procedure 56, granting me summary judgment; or, in the alternative, (ii) as my direct testimony for the trial of this matter. This affidavit is based upon my personal knowledge and review of documents and deposition transcript excerpts annexed to my attorneys' affidavit, *i.e.* the Affidavit of Walter A. Saurack, sworn to on January 9, 2013 (the "Saurack Aff.").

        **A.**     **The Policy**

        2.     On or about June 30, 2003, my now deceased twin brother David M. Litt (the "Decedent") applied for life insurance from Plaintiff Northwestern Mutual Life Insurance Company ("Northwestern"). *See* designations of deposition transcript of Northwestern representative Gail C. Junemann annexed to the Saurack Aff., at Exhibit A (the "Junemann Tr.")

1

at 17:16-18:3.[1] A copy of the Northwestern Life Insurance Application identified by Ms. Junemann at her deposition (the "Application") is annexed to the Saurack Aff. at Exhibit C. The Application identified me as the intended direct beneficiary of the policy. *See* Application, Saurack Aff., Exhibit C, at § 15 and Junemann Tr., 18:4-7.

3. Northwestern subsequently issued an individual life insurance policy bearing no. 16 579 951 to Decedent (the "Policy"), which names me as the sole beneficiary. *See* Junemann Tr., 14:10-17:7. A replica copy of the Policy indentified by Ms. Junemann at her deposition is annexed to the Saurack Aff. at Exhibit D. The death benefit on the Policy was $1,411,369. *See* Saurack Aff., Exh. J.

### B. Northwestern Consistently Has Recognized Me as the Policy's Beneficiary

4. My brother died on September 11, 2011. *See* Junemann Tr., 17:11-12 and designations from the transcript of the October 26, 2012 deposition of Defendant Tracey Copple-Litt ("Copple-Litt"), annexed to the Saurack Aff. at Exhibit E (the "Copple-Litt Tr."), 22:7-9.

5. At the time of my brother's death, Northwestern considered me the beneficiary of the Policy. *See* designations from the transcript of the November 20, 2012, deposition of Northwestern representative Deborah Luther (the "Luther Tr.") annexed to the Saurack Aff. at Exhibit F, 12:14-18.

6. Northwestern's understanding that I was the beneficiary on the Policy at the time of the my brother's death is reflected in documents identified by Ms. Luther at her deposition, including: (i) a "claim packet" mailed to me as the beneficiary of the Policy

---

[1] Northwestern is no longer a party to this interpleader action. Its counsel advised Mr. Saurack that Ms. Junemann (as well as another Northwestern representative deposed in this action, Deborah Luther) is unavailable for testimony at the trial in this action. *See* December 18, 2012 letter from Northwestern's counsel annexed to the Saurack Aff. as Exhibit B.

following the Decedent's death (Luther Tr., 13:14-14:25 and Exhibit G to the Saurack Aff.); (ii) a September 26, 2011 email from Ms. Luther to me regarding additional documents necessary to "proceed with payment" (s*ee* Luther Tr., 16:14-17:21 and Saurack Aff., Exhibit H); and (iii) a September 23, 2011 email from Ms. Luther to me forwarding an election and income proposal regarding the Policy payout. *See* Luther Tr., at 17:22-25 and Exhibit I to the Saurack Aff.

7. To this day, Northwestern considers me the beneficiary of the Policy. *See* Junemann Tr., 30:13-15; Luther Tr., 22:5-12.

8. The death benefit for the Policy, however, has not been paid to me because on September 29, 2011 (*i.e.* after my brother died) Copple-Litt's[2] attorney alleged in a letter to Northwestern that my brother submitted a completed Designation for Owner of Death Proceeds Only and Change of Client Information Form (the "Change of Beneficiary Form") to Northwestern in September of 2005. Copple-Litt alleges that my brother consequently amended the Policy in order to name Copple-Litt as the beneficiary. *See* Junemann Tr., 18:13-19:8 and Exhibit J to the Saurack Aff.

9. Copple-Litt admitted at her deposition that she never saw the Change of Beneficiary Form until she allegedly located it among "boxes and boxes" and "tons and tons" of the Decedent's business papers after his death. *See* Copple-Litt Tr., 33:18-21. In fact, Copple-Litt testified that aside from the purported Change of Beneficiary Form, she never saw a single document from Northwestern that identified her as the beneficiary of the Policy. *Id.* at 41:13-18.

    C. **Northwestern Never Received a Completed Change of Beneficiary Form**

---

[2] The Decedent and Ms. Copple-Litt were married on September 4, 2005. *See* Copple-Litt Tr., Exhibit E to Saurack Aff. at17:13-15.

3

10. Northwestern, however, indisputably <u>never</u> received the allegedly completed Change of Beneficiary Form. On the bottom of the first page of the Change of Beneficiary Form is a section designated "FOR HOME OFFICE USE," containing a space for the signature of a Northwestern representative to acknowledge receipt of the Change of Beneficiary Form, and a space for the date on which the acknowledgement is made. Neither of these spaces is filled out on the form sent by Mr. Peskin to Northwestern after the Decedent's death. *Id.*

11. At Northwestern's deposition, Ms. Junemann testified:

Q: [A change of beneficiary] is effective at a date when it's signed but also has to be signed by someone at Northwestern in this space?

A: Yes.

Q: And if it's not, the change is not effective?

A: Correct.

Q: And how do you know that?

A: It's not endorsed. I didn't see it until after the death.

*See* Junemann Tr., 21:24-22:10. Ms. Junemann further testified:

Q: Was this change of beneficiary ever recorded at Northwestern?

A: No.

*Id.* at 24:3-5.

12. Ms. Luther of Northwestern similarly testified:

Q: And prior to the receipt of this letter [Exhibit J], had Northwestern ever received this filled out change of beneficiary form and change of client information form?

A: To the best of my knowledge, no, we had not.

4

*See* Luther Tr., 19:14-17.[3]

13.     Copple-Litt believes that the Change of Beneficiary Form was sent to Northwestern based on an alleged September 29, 2005 facsimile message confirmation (Saurack Aff., Exh. K) (the "Confirmation") that she allegedly also found in the Decedent's files after his death (Copple-Litt Tr., 45:2-4).[4] Copple-Litt, however, admitted that she had no personal knowledge of whether the facsimile number of "9149464969" identified in confirmation as the recipient of the facsimile belonged to Northwestern. *Id.* at 44:22-25.

### D.     Gil Elmaleh Never Received the Completed Change of Beneficiary Form

14.     Copple-Litt now claims that the fax number identified in the Confirmation as the recipient of the fax by does <u>not</u> belong to Northwestern, but rather belongs to the Blumberg Group, where Gil Elmaleh ("Elmaleh"), the servicing agent for the Policy worked.

15.     Elmaleh, however, has admitted in a sworn statement that he, and to his knowledge no one at the Blumberg Group, ever received a copy of the allegedly completed Change of Beneficiary Form. A copy of Gil Elmaleh's Affidavit, sworn to on October 23, 2012 ("Elmaleh Aff."), is annexed to the Saurack Aff. as Exhibit L. Within his affidavit, Elmaleh states:

> Prior to October 9, 2012, I had never seen the executed Form. I (and to my knowledge Blumberg Group) never received the purported fax confirmation of the purportedly executed form.
>
> If I had received such form, I would have immediately filed the Form with the home office consistent with my regular practice.

---

[3] Copple-Litt testified that she has never seen, in the "tons and tons" of Northwestern papers she located in the Decedent's files, a copy of the Change of Beneficiary Form which was acknowledged by Northwestern. *See* Copple-Litt Tr., Saurack Aff,. Exhibit E at 37:9-38:9.

[4] Copple-Litt has not sought to take the deposition of Lehman Brothers or taken any steps to authenticate the Confirmation as a Lehman Brothers' business record. Saurack Aff., ¶13.

*See* Elmaleh Aff., ¶¶12 and 13.[5]

### E. Receipt of a Change of Beneficiary Form by Gil Elmaleh did not Effectuate a Change of Beneficiary on the Policy

16. Even if Copple-Litt could establish that Elmaleh received a facsimile from Lehman Brothers on September 29, 2005 (despite Elmaleh's sworn affidavit to the contrary) and that the transmission received was the completed Change of Beneficiary Form (even though there is no evidentiary support for this proposition), Copple-Litt's claim nonetheless fails.

17. The Policy and the testimony of Northwestern establish that a change of beneficiary form must be received by Northwestern's <u>home office</u> in order to become effective and that a change can only be made while the insured is living.

18. Section 10.2 of the Policy specifically provides that a "change of beneficiary" is "made *on receipt at the Home Office* of a written request that is acceptable to the Company" and that where, as here, the Insured was the Owner of the Policy, a change of beneficiary can only be made "while the Insured is living." Saurack Aff., Exh. D, Section, 10.2 (emphasis supplied).

19. The Policy does not state that receipt by a servicing agent is sufficient to effectuate a change of a beneficiary. Junemann Tr., Exh. 4, Section, 10.2. *See* Policy, Exhibit D at § 10.2. It says that the Home Office has to receive the Form. *Id.*

20. Ms. Junemann of Northwestern confirmed the terms of the Policy at her deposition, testifying:

> Q: In order for the completed form to be acceptable, it has to be received by the home office at the time that the insured is alive, correct?
>
> A: Yes.

---

[5] Tellingly, despite seeking and receiving an extension of the discovery deadline in this action in order to take the deposition of Elmaleh, Copple-Litt chose not to do so.

*See also* Junemann Tr., 41:6-9 ("Q. If the insured is the owner, then the change in designation has to be made while the insured is alive, correct? A. Correct."); 36:22-24 (Q. "So a change of beneficiary form had to be received prior to the date of his death? A. Yes.").

21. Similarly, Ms. Luther testified as follows:

Q: And was there any reason why Northwestern did not consider this form received by September 29, 2011 to be effective so far as changing the beneficiary on the Decedent's policy?

A. Based on the contract language, a beneficiary **designation has to be received in the home office** in a format that's acceptable for recording.

Q. So the – the change of beneficiary form had to be received by Northwestern while the insured was living?

A. Correct.

Q. Now when you testified that the change of beneficiary form has to be received by Northwestern while the insured/owner was living, are you referring to Section 10.2 on page 14?

A. Yes, I am.

Luther Tr., 19:24-20-17 (emphasis supplied)(citing Exhibit D and J hereto); *see also* Lurther Tr., 28:1 – 13 ("Based on the contract, it needs to be received in the home office prior to the insured's death.")

22. Further, the Policy says "[a] change in the policy is valid only if it is approved by an officer of the Company." *Id.*, Section, 1.2. Similarly, Elmaleh's Full-Time Special or Soliciting Agent's Contract with Northwestern (the "Agency Contract"), a copy of which is annexed to the Elmaleh Aff. as Exhibit G, makes it clear that the Decedent's alleged facsimile of the Change of Beneficiary Form to Elmaleh is insufficient for purposes of changing the beneficiary on the Policy. The very first page of the Agency Contract provides:

> **Alteration of Policies** – Agent shall have no power, personally or on behalf of the Company or First Party, to waive any forfeiture or

7

to alter or discharge or waive any of the terms and conditions of any policy or contract.

*See also* Junemann Tr., 48:13-6 ("Q. Did Elmaleh during the period in which he was a servicing agent have the power or authority to change the beneficiary on the policy. A. No.")

### F. Decedent did Not Take Steps Necessary to Change the Beneficiary Designation After he was Notified the Designation was Unchanged

23. In addition to failing to comply with the requisite steps necessary in order to change the beneficiary on the policy in 2005 (*i.e.* forwarding the Change of Beneficiary Form to Northwestern's Home Office), Decedent plainly did take any steps to change the beneficiary on the Policy from Litt to Copple-Litt after being notified on multiple occasions that the beneficiary designation had not been changed. Approximately six (6) years elapsed between the alleged execution of the Change of Beneficiary Form in September of 2005 and my brother's death in September 2011. During that period, my brother indisputably received <u>six (6)</u> Life Insurance Annual Policy Statements. Saurack Aff., Exh, M. Each and every annual statement indicates on the first page "Direct Beneficiary: Steven Litt." *See* Saurack Aff., Exhibit M; Junemann Tr., 63:1-64:24. Each of the six (6) annual statements advised the Decedent on the first page, "**For Changes to Your Personal Information (Address, Owner, Beneficiary) or Service Questions** Call: 1-800-388-8123." *See* 2005, 2006, 2007, 2008, 2009 and 2010 Northwestern Life Insurance Annual Policy Statements, Exhibit L to Saurack Aff. (emphasis in original). Thus, the Decedent had at least six opportunities to review the vital information regarding the Policy, including the named beneficiary, and to call Northwestern if he wanted to change the named beneficiary. Instead, he indisputably did nothing.

8

24. Copple-Litt claimed at her deposition that "all" of the "tons and tons" of Northwestern documents which she found in the Decedent's paperwork after his death, including the annual statements, were found unopened. Copple Litt Tr., 45:8-12; 56:14-17. Copple-Litt nonetheless saw fit to open the Northwestern documents and then discard the envelopes. *See* Copple-Litt Tr., Exhibit E at 56:11-56:20; 57:16-18.

25. Copple-Litt was forced to admit through cross-examination that not all of my brother's mail from Northwestern was left unopened. Policy loan statements (which were produced by Copple-Litt at her deposition) reflect that the payment stubs at the bottom of the statements were torn off by my brother, and therefore, removed by him from their envelopes. After being confronted with the Policy loan statements, Copple-Litt changed her testimony, stating:

> Q: Are you sure that everything was in an envelope?
>
> A: I - - I'm sure - - I don't know.
>
> Q: Well, would it be fair to say if those documents were in a sealed envelope, the bottoms couldn't have been ripped off?
>
> A: Yes.

*See* Copple-Litt Tr., at 85:14-21.

26. Additionally, on October 4, 2005, or five (5) days after the Decedent allegedly faxed the executed Change of Beneficiary Form to Elmaleh, Northwestern sent an October 4, 2005 letter to the Decedent stating:

> Thank you for notifying us of your wish to change the beneficiary designation on your contract. To help us make this change, please complete the enclosed form and return it in the postage-paid envelope.
>
> As soon as we receive the form, we'll change the designation and send you an acknowledgment to confirm the change. **Your designation will remain unchanged until we hear from you.**

9

*See* October 4, 2005 letter, Exhibit N (emphasis added) and Junemann Tr. 59:1-61:19. In response to this request for an executed change of beneficiary form as well as the warning that the change would not take effect until such time as the form was received by Northwestern, my brother took no action. *See* Junemann Tr., Exhibit A at 62:15-17. Further, it is undisputed that Decedent never responded to this letter and never was sent an acknowledgment letter. Junemann Tr. 34: 10-12; 62:15-17.

27. Then, during a November 30, 2007 meeting with Elmaleh, Decedent asked him to change the beneficiary on the Policy to Copple-Litt. *See* Elmaleh Aff., ¶ 8. On the same day, Elmaleh's assistant, Sarah Miller sent an email to my brother forwarding him a change of beneficiary form. *Id.* ¶ 9 and Exhibit C. Then, Elmaleh sent an email to my brother confirming that his assistant had sent him the requested change of beneficiary form. *Id.* and Exhibit D to the Elmaleh Aff. Despite numerous attempts by Elmaleh to follow-up with the Decedent regarding his request to change the beneficiary on the Policy, my brother was unresponsive. *Id.* ¶ 11. These facts alone demonstrate that as of November 30, 2007 my brother was well aware of the fact that Copple-Litt had not been substituted as the Policy's beneficiary and yet indisputably took no steps to change the beneficiary on the Policy.

28. Finally, on February 6, 2008, my brother sent Elmaleh an e-mail with an attachment concerning updating his information regarding the Policy. In response to the question "[a]re your beneficiary designations up to date," he responded "no." Elmaleh Aff., ¶14 and Exhibit F. Again, despite his acknowledgement that the beneficiary designation on the Policy (Steven Litt) was not updated, he indisputably took no action to change the Policy to name Copple-Litt as the beneficiary.

10

29. It is not at all surprising that my brother never changed the beneficiary on the Policy to Copple-Litt. My brother and Copple-Litt enjoyed, at best, a tumultuous six (6) year marriage which is evidenced by, among other things:

(i) The admitted fact that for the majority of the time that they were married, including at the time of the Decedent's death, the Decedent and Copple-Litt did not live together. *See* Copple-Litt Tr., Exhibit E at 19:24 – 21:24; 22:10-14.

(ii) Copple-Litt's struggles with alcohol which included treatment at Alcoholics Anonymous and two arrests for driving while intoxicated. *Id.* at 58:11-13; 59:7-15; 59:23-60:6; 62:23-64:12.

(iii) The fact that the Decedent asked his wife, Copple-Litt, not to attend several family functions and events, including visiting my ill mother and father's funeral. *Id.* at 29:8-31:11.

**WHEREFORE**, Steven Litt requests that this application be granted in all respects.

_____
Steven Litt

Sworn to before me this
9th day of January, 2013

_____
Notary Public

OFFICIAL SEAL
ANASTASIA M BRACY
NOTARY PUBLIC-OREGON
COMMISSION NO. 439170
MY COMMISSION EXPIRES MAY 25, 2013

11