Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

Plaintiff,

- against -

STEVEN LITT and TRACY COPPLE-LITT,

Defendants.

12 Civ. 2514 (PKC)(HBP)

**DEFENDANT STEVEN LITT'S DEPOSITION DESIGNATIONS PURSUANT TO RULE 29 OF THE COMMERCIAL DIVISION OF THE SUPREME COURT**

Pursuant to Rule 29 of the Commercial Division of the Supreme, defendant Steven Litt hereby designates and submits the following deposition testimony for use at trial.

**Deposition of Deborah Luther conducted November 20, 2012**

| Page and Line of Designated Testimony |
|---|
| 4:1-5 |
| 4:24-25, 5:1-9 |
| 5-12-25, 6:1-25, 7:1-25, 8:1 |
| 8:13-25, 9:1-23 |
| 10:12-25, 11:1-22 |
| 12:4-25, 13:1-25, 14:1-25, 15:1-25, 16:1-25, 17:1-25, 18:1-25, 19:1-25, 20:1-25, 21:1-25, 22:1-12 |
| 23:7-21 |
| 23:25, 24:1-25, 25:1-12 |
| 25:17-25, 26:1-7 |
| 27:3-12 |
| 27:21-25, 28:1-13 |

| Page and Line of Designated Testimony |
| --- |
| 33:3-22 |
| 34:21-25, 35:1-25, 36:1-14 |
| 37:7-25, 38:1-25, 39:1-25, 40:1-25, 41:1-25, 42:1-21 |
| 45:1-25 |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

Plaintiff,

vs. Case No. 12 Civ. 2514(PKC)(HBP)

STEVEN LITT and TRACY COPPLE-LITT,

Defendants.

---

Deposition of DEBORAH LUTHER

Tuesday, November 20, 2012

1:05 p.m.

at

Mallery & Zimmerman, S.C.
731 North Jackson Street
Milwaukee, Wisconsin

Reported by Dawn M. Lahti, RPR/CRR



Deposition of DEBORAH LUTHER, a witness in the above-entitled action, taken at the instance of the Defendants, pursuant to the Federal Rules of Civil Procedure, before Dawn M. Lahti, RPR, Certified Realtime Reporter, and Notary Public, State of Wisconsin, at 731 North Jackson Street, Milwaukee, Wisconsin, on the 20th day of November, 2012, commencing at 1:05 p.m. and concluding at 2:15 p.m.

A P P E A R A N C E S:

NORTHWESTERN MUTUAL, by
Mr. C. Claibourne Greene
720 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Appeared on behalf of Plaintiff.

SATTERLEE STEPHENS BURKE & BURKE, LLP, by
Mr. Walter A. Saurack
230 Park Avenue, Suite 1130
New York, New York 10169
Appeared on behalf of Steven Litt.

LAW OFFICE OF RICHARD S. PESKIN, by
Mr. Richard S. Peskin
6 East 39th Street, 6th Floor
New York, New York 10016
Appeared on behalf of Tracy Copple-Litt.

E X A M I N A T I O N

| | |
|---|---|
| BY MR. SAURACK | 4 |
| BY MR. PESKIN | 27 |
| BY MR. SAURACK | 37 |
| BY MR. PESKIN | 42 |
| BY MR. SAURACK | 43 |

E X H I B I T S

| EXHIBIT NO. | | PAGE MARKED |
|---|---|---|
| 1 | Claim Packet | 13 |
| 2 | Screen Shot of Mailing | 15 |
| 3 | Screen Shot of Mailing | 16 |
| 4 | Screen Shot of System | 17 |
| 5 | Change of Client Information | 35 |

(Original exhibits retained by Attorney Saurack. Copies of exhibits attached to Original transcript and copies.)



TRANSCRIPT OF PROCEEDINGS

DEBORAH LUTHER, called as a witness herein, having been first duly sworn on oath, was examined and testified as follows:

EXAMINATION

~~BY MR. SAURACK:~~

Q Good afternoon. My name is Walter Saurack. I represent Steven Litt in this matter that's pending in the Southern District of New York. I'm here to ask you some questions today relating to that case.

Just a couple of quick instructions. One is, if you don't understand a question, let me know. Okay?

A Okay.

Q And all your answers have to be verbal so the court reporter can record them.

A Sure.

Q If you can't hear a question or need it rephrased, let me know, and I'll do that. And if you need a break, just let your attorney know, and we'll take a break with the only exception being between a question and answer. Okay?

~~A Okay.~~

Q Please state your name for the record.

A Deborah Luther.



Q Where are you currently employed?
A Northwestern Mutual.
Q What's your position at Northwestern?
A Claims consultant.
Q What are your responsibilities as a claims consultant?
A Doing contestable, large dollar claims, annuity claims, variable and fixed annuities, training, mentoring.
~~Q And are you in a particular department?~~
~~A Pardon me?~~
Q Are you in a particular department?
A I am in the policy owner services department.
Q And how long have you been in that position?
A In the consultant position, about ten years.
Q How long have you been at Northwestern?
A 30.
Q What prior positions did you hold at Northwestern?
A Mainly various levels of analyst positions in the life claims area.
Q What generally were your responsibilities as an analyst in those positions?
A Building from more simple claims, smaller dollar amount, less complex into the annuities, again, fixed and variable, and then now the consultant

position with the contestable claims where death occurs in the first two years, and so you have building responsibility and all those areas.

Q What kind of taxes do you perform in your current position?

A Claims, writing letters, paying claims, investigating the contestable claims, communications with all types of beneficiaries, attorneys, financial representatives, along with training and project work.

Q Do you make any determinations concerning particular disputes for the company?

A No, those would be referred to law department if it is a legal basis.

Q Do you provide recommendations with respect to claims for the legal department?

A We don't provide recommendations to the law department. We seek for their information, and ultimately the decision is made in the claims area typically between myself and our director.

Q Who's your director?

A Sandy Scott Tyas -- Sandy Scott.

Q So she would be the one to make decisions concerning issues related to coverage that you may be investigating?

A Would this be with respect to contestable claims or --
Q Yes.
A With contestable claims in the first two years if our recommendation -- my recommendation would be to pay less than the full amount, then we would have a discussion with her and make the decision.
Q And you also handle your current position beneficiary disputes over who the beneficiary in a policy is?
A We gather information and then consult with our law department too.
Q Who ultimately makes a decision as to which beneficiary in, let's say, the life insurance context would be paid under the policy?
A If it's a decision that we feel that we're comfortable with making based on the set of facts, then we have that within our power to do so taking into consideration the information that's been provided from the law department.
If it's of a more complex nature or there's a higher risk, then we may consult with Sandy Scott, or we have what we call law rounds where we have kind of a variety of people with different knowledge base that we kind of have a

discussion to come to a conclusion.

Q In certain cases a determination may be made to file an interpleader action?

A Correct.

Q And who would make that recommendation?

A We would refer those to law department. Ms. Malcore is our contact, and she provides us with guidance there.

Q So law department would make the determination as to whether an interpleader claim needed to be filed?

A Correct.

Q Do you have any licenses in the insurance industry?

A I do. I have a series 6 and 26.

Q What's your -- what is a series 6 for?

A For handling of the variable annuity products and the communications that arise out of those claims.

Q How about series 26?

A 26 is for -- it's a registered principal. It's for supervisory position over the level 6 people.

Q What's your last level of post high school education, if any?

A Bachelor's degree in business.

Q And where from?

A Concordia College.



Q Have you had any specific training in the insurance industry outside of training that you may have had with respect to your licenses?
A I've taken and passed LOMA exams 1 through 8.
Q What is LOMA exams?
A Law Office Management Association. They're associated with insurance.
Q Any other insurance industry training?
A No.
Q And of course you have on-the-job training, correct?
A Correct.
Q I'm going to ask you to take a look at the documents marked as Exhibit 1 and ask you to take a look at that document, and tell me if you recognize it.
A I do.
Q What is that document?
A It's the subpoena between the parties. I remember reading it.
Q Is this the subpoena of Northwestern Life vs. Litt and Litt case?
A Correct.
~~Q And if you take a look at page 5 through 7, do you see a series of document requests?~~



A Yes.
Q Were you involved in collecting documents for those document requests?
A I don't recall in this particular instance, but typically law department will provide us with the documents that they've gathered and asked for our director to sign off.
Q Would you have any role in actually locating the documents?
A I might. I don't recall in this particular case if I did.
Q Could you take a look at page 8? Prior to your testimony today, did you review this list of subjects for examination?
A Yes, I did.
Q And do you have knowledge of any of the subjects listed in the schedule?
A I do.
Q Which letters do you have knowledge of?
A I did refer to the policy as far as letter A. I don't know if I have specific knowledge about B.
Q Take your time and just tell me which -- designated by letter which topic areas you have knowledge of.
A C, D, and that would be it.
Q So A, C and D?

MR. GREENE: I'm not trying to interrupt, but just to be clear. We are producing Ms. Luther to talk about the interpleader complaint as it relates to the factual allegations made there relating to the receipt of the claim for death benefits and the decision made at the interplead.

BY MR. SAURACK:

Q So this is -- so you're familiar with A through D?

A C, I don't feel I have knowledge of because I can't document when something was sent.

Q If you could flip to Exhibit A and just review that document, and tell me what it is.

A It's between Steven Litt and Tracy Copple-Litt alleging that the monies from the life insurance policy, I believe, should be payable to Steven Litt.

Q So this is the interpleader complaint that was filed by Northwestern?

A Yes.

Q Do you recall having reviewed this complaint prior to today?

A I did, yes.

~~Q If you take a look at Exhibit 2, and tell me if you've ever seen that document before.~~

~~A I have not.~~



Q And can you look at Exhibit 3, and tell me if you've reviewed that document before.
A No, I have not seen that.
Q Can you flip to Exhibit 4? And tell me if you've seen that document before.
A Yes, I have.
Q Tell me what that document is.
A That's a replica of the insurance policy on the life of David Litt.
Q And who is the owner of that policy?
A David Litt.
Q And who was the beneficiary of that policy?
A It was Steven Litt.
Q And as far as Northwestern is concerned and the records, who is the current beneficiary of that policy?
A The last change of beneficiary we show on record was Steven Litt.
Q And Mr. Litt died sometime in 2011. You agree with that?
A Yes.
Q Are you familiar with it being September 11, 2011?
A Yes.
Q Your testimony will refer to Mr. Litt as decedent, okay?

A (Nods.)
Q And do you know what Mr. Steven Litt's relationship was to decedent?
A He was the brother.
Q Are you aware of whether decedent was married at the time of his death?
A According to the death certificate, he was married but separated.
Q After decedent passed away, Northwestern mailed a beneficiary claim statement to Steven Litt?
A No, we did not. Oh, a claim statement, I apologize. Yes, a claim statement was mailed to him.

(Exhibit 1 was marked for identification.)

BY MR. SAURACK:
Q I'll ask you to take a look at that document, and tell me if you recognize it.
A Yes, I do.
Q And what is that document?
A This is our claim packet that we send out at the time of death.
Q If you look at -- when I refer to documents, I refer to them by Bates number which is in the bottom right-hand corner of the document.

A Okay.
Q If you could look at the first page, 284, this was a letter that was sent to Steven Litt, correct?
A Correct.
Q And if you look at the next page, 285, it was sent by you to Mr. Litt?
A Correct.
Q And it was CC'd to Gil Elmaleh?
A Correct.
Q And that's your electronic signature?
A Yes, it is.
Q And is this a document that was created in the ordinary course of business at Northwestern?
A Yes.
Q It's maintained in the ordinary course of business at Northwestern?
A Yes.
Q And tell me what the purpose of this -- Strike that. This was mailed to Mr. Litt?
A Yes, it was.
Q What was the purpose of this mailing?
A To inform him of the insurance policy, and that our records reflected he was the beneficiary and what requirements would be needed in order for him to make claim to that benefit.



(Exhibit 2 was marked for identification.)

BY MR. SAURACK:

Q I ask you to take a look at the documents that are marked as Luther Exhibit 2, and tell me if you recognize the series of documents.

A Yes, I do.

Q And what -- what is that series of documents?

A The first page is a screen shot of our claim system, and that's indicating that mail had come in. The mail that had come in was the claim form marked the beneficiary claim statement signed by Steven Litt, and the subsequent page entitled Election of Fixed Income Plan was his settlement choice, and then finally a death certificate was provided with a pending manner of death.

Q And this was sent to Northwestern by Steven Litt?

A Correct.

Q And it was received by Northwestern?

A Yes.

Q And it was maintained in the ordinary course of business by Northwestern after it was received?

A Yes.

Q And I see on the first page is the case owner?

A Yes.



Q What does that mean?
A That means I was the analyst assigned to it and working the claim.
Q And what was your responsibility as the analyst assigned in connection with the claim?
A To review the documentation, determine the beneficiary according to our records, to communicate with that party and ultimately obtain the required requirements necessary for any payment.
(Exhibit 3 was marked for identification.)
BY MR. SAURACK:
Q I ask you to take a look at what's been marked as Exhibit 3, and tell me if you recognize that document or documents.
A Yes, I do.
Q And what is that series of documents as Exhibit 3?
A The first page is, again, a screen shot of our claim system indicating that an e-mail had come in or gone out. I can't quite -- an e-mail was sent, I apologize. And the second page is my e-mail to Mr. Litt indicating that I had been able to review the paperwork he submitted.
I did note that the death

certificate was not a final copy of the death certificate. We need to determine the final cause and manner of death before we could proceed with any payment.
Q And this is dated September 26, 2011?
A Correct.
Q And this was an e-mail from you to Mr. Litt?
A Yes.
Q This is an e-mail that's maintained in the ordinary course of business at Northwestern?
A Yes.
Q It was generated in the ordinary course of business at Northwestern?
A Yes.
Q And it was, again, sent by you to Mr. Litt on September 26, 2011, correct?
A Correct.
Q And aside from the issue regarding the death certificate, you indicate the claim papers election forms submitted were fine, correct?
A Correct.
(Exhibit 4 was marked for identification.)
BY MR. SAURACK:
Q Please take a look at that document, and tell me if



you recognize it.
A Yes, I do.
Q What is it?
A This is a screen shot of our system. I'm e-mailing the election form and the income plan proposal to Mr. Litt. He and I had had a discussion about the income plan as one of the settlement choices he was interested in, so I was e-mailing him information on how to select that plan.
Q And the final page of the document 157 is your e-mail for the forms that are before it?
A Correct.
Q And it's dated September 23rd, and it's an e-mail from you to Steven Litt, correct?
A Correct.
Q And it says, Here's the proposed election form we discussed. Right?
A Correct.
Q And in the ordinary course of business at Northwestern, you forwarded these forms to Mr. Litt on or about September 23, 2011?
A Yes.
Q And this is -- these documents are maintained in the ordinary course of business at Northwestern?
A Yes, they are.

Q Now, if you can go back to the exhibits from the prior deposition. Go to Exhibit 6. Do you recognize the exhibits previously marked as Exhibit 6?
A Yes, I do.
Q And this is a letter and change of beneficiary form that was sent to you by attorneys for Tracy Copple-Litt?
A Correct.
Q And prior to receipt of this letter, you're unaware of any claim by Ms. Copple-Litt concerning receipt of the proceeds of his policy?
A That is correct.
Q And prior to September 29, 2011, had Northwestern ever received this filled out change of beneficiary form and change of client information form?
A To the best of my knowledge, no, we had not.
Q And did you look into whether this form had been received prior to this date?
A I did. I reviewed our system. We do a search to see if there are any other cases that were opened up that would have included that form, and we did not find any.
Q And was there any reason why Northwestern did not consider this form received by September 29, 2011

to be effective so far as changing the beneficiary on the decedent's policy?
A Based on the contract language, a beneficiary designation has to be received in the home office in a format that's acceptable for recording.
Q So the -- the change of beneficiary form had to be received by Northwestern while the insured was living?
A Correct.
Q Take a look at Exhibit 4. This is the policy you testified about earlier?
A Yes.
Q Now, when you testified and said that the change of beneficiary form has to be received by Northwestern while the insured/owner decedent was living, are you referring to Section 10.2 on page 14?
A Yes, I am.
Q And what part of that paragraph are you referring to?
A The effective date, the naming or changing of a beneficiary will be made on receipt at the home office of a written request that's acceptable to the company.
Q And also the by owner paragraph, are you referring to that as well?



A Yes, and that also indicates that it has to be while the insured is living.
Q And there are certain situations in which the change of beneficiary form can be received by Northwestern in the first 60 days after the date of death for the insured, is that right?
A That is correct.
Q And that's a situation where the insured just before his death was not the owner, is that right?
A Correct.
Q And that's indicated in Section 10.2 --
A Yes.
Q -- by the owner?
A Yes.
Q Now, an example of the insured not being the owner would be a trust, is that right?
A Correct.
Q Any other examples that you can think of?
A Could be a spouse, a child, trust, anyone other than the insured.
Q Now, after you -- at the time you were looking at this claim, you reviewed Mr. Peskin's letter, right?
A Correct.
Q You viewed the policy?



A Yes.
Q And you reviewed Northwestern's files for this policy?
A Yes.
Q Internally Northwestern maintained its position that Steven Litt was the beneficiary in the policy?
A As far as our records reflected, yes, Mr. Litt was the beneficiary. When someone asserts an interest -- not an interest, a claim against the benefits, we refer it to law department if there seems to be that there's a possibility of any legal basis.
Q And the law department also made a decision to file the interpleader complaint that you reviewed earlier?
A Correct.
Q Are you familiar with Gil Elmaleh?
A Only that I had spoken with him just briefly to get his -- his case notes to identify his knowledge as to any beneficiary change.
Q Could you take a look at Exhibit 17? Are you familiar with that document?
A No, I have not seen this one.
Q Do you recognize the substance of the -- what are described as meeting notes on page 811 or 812?



~~A I'm sorry, I'm not seeing the reference.~~
Q On Bates page 811, it appears to be a series of notes. Do you see that?
A Yes.
Q Are you familiar with these notes?
~~A I have not seen these notes.~~
Q But you've discussed Mr. Elmaleh's notes with him at around the time you were looking into this claim?
A Yes.
Q And what was the result of that discussion?
A He indicated that he had provided him with a form to Mr. Litt to make him the agent for his policy. That's the block transfer. And at that time there was a discussion of possibly changing the beneficiary. He gave them a beneficiary designation form, but he had never received anything signed back from him.
Q So he told you that he never received a filled out change of beneficiary form?
A Correct.
~~Q Did you have any other discussions with Mr. Elmaleh about the claim here?~~
~~A Not that I recall.~~
Q Did you take any other steps to investigate this



claim?
A We researched the home office records to try and find these forms and discussed with the financial representative what knowledge he had of it, and that's the extent of the investigation.
Q And the results of that investigation was that there was no record of a filled out change of beneficiary form being received by the agent or by the home office?
A Correct.
Q Do you have any familiarity with Northwestern's policies concerning changing beneficiaries?
A I'm not in the area that routinely does that, no.
Q Do you have any knowledge concerning the authority of agents to change beneficiaries on policies?
A No.
Q Do you have any knowledge concerning Mr. Elmaleh's contract with John D. Blumberg group?
A No, just that he works in that agency, but details, I don't have any knowledge.
Q How about John D. Blumberg's contract with Northwestern, do you have any knowledge concerning that?
A No.
Q Did you review annual policy statements when you

were looking at Mr. Steven Litt's claim?

A I don't recall specifically in this instance, but typically when we do have a question, we will refer back to the annual policy statements to see if the beneficiary was noted on there.

Q Take a look at what was previously marked as Exhibit 15. Take a look at these documents and see if this refreshes your recollection as to whether you reviewed Mr. Litt's policy statements at the time that you conducted your review.

A I do note on these statements that Steven Litt was listed as the sole direct beneficiary.

~~Q Does it refresh your recollection as to whether you reviewed that at the time you were looking at the claims?~~

~~A I do not recall.~~

Q If you take a look at Exhibit 5, please. Tell me if you recognize that document.

A Yes.

Q And that is Dave Litt's application for the policy issued in this case?

A Correct.

Q And if you look at Bates 168, it indicates the name Steven Litt, his brother, as the direct beneficiary?

A Correct.
Q Is that something you reviewed when you were looking at the claim?
A Yes. We always go back and confirm our records and match it up to the application or any subsequent changes in what we refer to as our title file to make sure that it's accurate.
Q ~~Take a look at 14, please. Do you recognize this~~ document?
A I do not recall this.
Q Please look at Exhibit 16, and tell me if you recognize that document.
A 16, you said?
Q Yes, please.
A No, I do not.
MR. SAURACK: I have no further questions.

EXAMINATION

BY MR. PESKIN:
Q Good afternoon, Ms. Luther.
A Hello.
Q My name is Richard Peskin. I'm representing Tracy Copple-Litt, the wife of the decedent, and I just have a few questions for you.
~~You had indicated that you do~~



~~training in your position?~~

~~A Not currently. I have in the past.~~

Q Have you ever done any training in relation to the requirements that are necessary to appear on a change of beneficiary form in order for the form to be acceptable to the insurance company for recording?

A No, that would be determined by the Beneficiary & Title area prior to a claim.

Q Are you familiar with what the requirements are to a valid change of beneficiary form?

A Not all of them.

~~Q Can you look at what's been previously marked as~~ Exhibit 7? Have you ever seen this document before?

A I have not.

Q Is your area under the scope of policy owner services?

A We are a division within the policy owner services ~~department.~~

Q So it's not within your expertise as to making a determination as to whether a change of beneficiary form meets the requirements of Northwestern in order to be valid?

A Correct.



Q What is your basis for testifying that? Because the change of beneficiary form which I submitted to you shouldn't be recorded by Northwestern.

MR. SAURACK: Objection to form.

THE WITNESS: I'm sorry?

MR. SAURACK: I objected to form.

MR. PESKIN: Did you understand my question?

THE WITNESS: I did.

MR. PESKIN: You can answer.

THE WITNESS: Based on the contract, it needs to be received in the home office prior to the insured's death.

BY MR. PESKIN:

Q Would it change your testimony if you knew that in a training manual of Northwestern Mutual in Beneficiary & Title there was a provision that said -- and I'll read it to you or you can look at it -- it's on page 10 of Exhibit 7 under Effective Date.

By the way, do you know what a network office is? Can you describe the Northwestern Mutual network?

MR. GREENE: Which question do you want her to answer, the last one?

~~to go there.~~

BY MR. PESKIN:

Q So I think it was your testimony that after you received my letter with the copies of the purported change of beneficiary forms, you didn't proceed to have them recorded by Northwestern because they were received after the death of the insured?

A Correct.

Q And what is your basis for your position that the change of beneficiary form executed by the insured, although received by Northwestern's home office after his death, is not effective?

A The owner needs to present it to Northwestern Mutual or its network office to be forwarded to the home office for recording. Until they submit the form, we don't know if it truly is their intent to have this made a part of the policy. They haven't affirmatively told us by submitting the form that they wanted that to be made a part of the contract.

Q But in this instance, you did receive a form duly signed by the owner?

A We did not receive the form prior to that.

~~Q No, that's my issue. What is your basis for your position that the form had to be received prior to death in order to be valid?~~



A Well, the owner was deceased when the form was presented to us, so he himself did not present it to us for recording.

Q Is it your position that the owner himself has to place the change of beneficiary form in the mailbox in order for it to be valid?

MR. SAURACK: Objection, form.

THE WITNESS: Can I answer?

MR. GREENE: Yes. Unless I direct you not to answer, you need to answer if you can.

THE WITNESS: We take the position that until they have made their commitment to have this change made with the home office either by putting it in the mail to us, presenting it to their financial representative or it being received in the home office in an acceptable format, that any time prior to that, they could have changed their mind, and so we don't know what may have happened in this instance.

BY MR. PESKIN:

Q All right. So let me -- let me show you a series of documents which I'll represent to you are those documents that are already marked as Exhibit 6, namely, the change of client information page, the designation of beneficiaries by owner, the

additional beneficiary provisions instruction page, the beneficiary information sheet and the instruction page with the addition of a fax confirmation sheet and -- why don't we mark this as the next.

(Exhibit 5 was marked for identification.)

MR. PESKIN: You can take a look it. And if you want to verify the documents are as I stated, please do so.

MR. SAURACK: What are you representing it to be? You have a fax cover sheet, and they have documents that have different information fax-wise at the top. Are you just representing them to be what they received plus that fax confirmation?

MR. PESKIN: Yes.

MR. SAURACK: You're not necessarily representing that they're part of the same packet; you're just representing that those are two documents and you're presenting them together?

MR. PESKIN: No. I'm representing that those are the documents that were sent to the network office of Northwestern Mutual on the date that they were signed.

MR. SAURACK: Well, I don't think you can represent that. I object to foundation.

MR. GREENE: Do we have a question pending?

MR. PESKIN: No, there's no question pending.

MR. GREENE: He just wants you to review them, so there's not a question pending.

BY MR. PESKIN:

Q And I presume you haven't seen this -- the cover sheet before?

A This? No.

MR. PESKIN: I don't have any other questioning on it.

MR. GREENE: Is this your only copy?

MR. PESKIN: Yeah, I'll need that back. It's my original anyway, right?

MR. GREENE: It's up to you guys what you want to do with the exhibit.

MR. SAURACK: We'll probably need to -- I have another copy of it if you need it.

MR. PESKIN: I just want to keep it segregated in a separate file.

MR. GREENE: I'll leave it here for the time being, and we can deal with it at the end of

~~the deposition~~

MR. PESKIN: All right. I don't think I have anything else. Let me just double-check some of my notes here. I don't have anything else.

EXAMINATION

~~BY MR. SAURACK:~~

Q Could you turn back to Exhibit 4, please? If you go to Section 10.2 on page 14.

A Yes.

Q The effective date paragraph says, A naming or change of beneficiary will made on receipt of the home office of a written request that is acceptable to the company, correct?

A Correct.

Q That doesn't say anything about a network office, right?

A No.

Q And if the company -- Strike that. If an agent had received the change of beneficiary form after the decedent's death and then submitted it, that would not be satisfactory, correct, if the insurer was no longer living?

A I'm sorry. Could you restate that again?

Q If the -- if an agent had received a change of beneficiary form and it was not submitted to the

home office until after the insured had died, that would not be satisfactory even if the agent had a copy of the filled out form, is that correct?

A If he had the form in his possession prior to death and it was in an acceptable format, it would be something we would take into consideration as far as a valid change.

Q It would be taken into consideration. But would you agree that the contract says that a naming of change of beneficiary would have to be on receipt at the home office, is that right?

A Correct.

Q So it doesn't say at an agent's office?

A It does not.

Q And does it say anywhere in Section 10.2 that an agent can receive a change of beneficiary form prior to death, and if it's presented posthumously, that it's an effective change?

A No, it does not.

Q Would you agree that's counter to what's in 10.2?

A Yes.

Q So is it your testimony it's Northwestern's policy that if an agent receives a filled out change of beneficiary form pre-death and submits it post-death, that that's not an effective change of



beneficiary?

A If it's an acceptable format and signed by the owner, it would be taken into consideration at the time of payment.

Q How about per this policy, this particular policy per 10.2? If per this policy, the change of beneficiary form was sent to the agent and then -- pre-death and then the agent sent it post-death, does this policy say that that would be effective?

A It does not say it would be effective.

Q In fact, it says the opposite, correct?

A Correct.

Q And it says that the home office has to receive that filled out form prior to the decedent's death, correct?

A Correct.

Q So in this case, had Mr. Elmaleh had a filled out form prior to Mr. Litt's death and then submitted it post-death, this policy would dictate that Steven Litt would still be the beneficiary, correct?

A There would be multiple things that we would take into consideration, one being that the form was in his possession. And as far as the owner goes, he had done what he was -- he had taken steps to

submit it to the home office.

Q But per this policy, it's the case that it had to be submitted by the agent who had it pre-death, correct?

MR. PESKIN: Objection.

THE WITNESS: Correct.

BY MR. SAURACK:

Q And would you agree that other considerations that you looked into would be the fact that the decedent had statements that said that the beneficiary had not been changed?

A I'm sorry, can you restate that?

Q Sure. Would you also take into consideration the fact that annual statements still reflected that the beneficiary had not been changed?

A That would be another piece that we would review, correct.

Q And would you take into consideration the fact that -- if you take a look at Exhibit 14 -- I'll withdraw my question for the moment. I'll ask you to take a look at 14. Take a look at 6.

A 6.

Q 6 and 14. 6 reflects the fact, does it not, that this reported change of client information form and change of beneficiary form are dated September 29,



2005. Is that what it says?
A You're looking at Junemann 6?
Q It's Bates 122 through 126.
A I'm sorry, restate your question.
Q These documents are dated September 29, 2005, correct?
A Correct.
Q And Exhibit 14 is dated October 4, 2005, correct?
A Correct.
Q And Northwestern by Exhibit 14 sent the change of beneficiary form to Mr. Litt as of October 4, 2005, correct?
A Correct.
Q After September 29, 2005?
A Yes.
Q And it says in the letter, Your designation will remain unchanged until we hear from you. Correct?
A Correct.
Q Would you have taken that into consideration when you were looking at whether it was the decedent's intent to change the beneficiary?
A Those would all be pieces that we would consider, correct.
Q Would you also look into the fact that an agent had sent a change of beneficiary form to decedent again



on 11/30/2007, but that the decedent had not mailed back the change of beneficiary form after that date?

A Correct.

Q And is it your testimony that you don't work in the department that sets policies and procedures for change of beneficiaries in connection with life insurance policies?

A I work in the department that does, but the division within the department is different than the one that I work in.

Q And you don't train on these issues?

A No, I do not.

Q And you don't -- you don't formulate policies and procedures with respect to these issues?

A No.

Q And also when you're looking into whether or not a decedent intended to change a beneficiary, would you look into the fact that the agent said he never received the filled out change of beneficiary form?

A Yes.

~~MR. SAUBACK: I have no further questions.~~

EXAMINATION



STATE OF WISCONSIN )
) SS:
MILWAUKEE COUNTY )

I, Dawn M. Lahti, RPR, Certified Realtime Reporter, and Notary Public in and for the State of Wisconsin, do hereby certify that the preceding deposition was recorded by me and reduced to writing under my personal direction.

I further certify that said deposition was taken at 731 North Jackson Street, Milwaukee, Wisconsin, on the 20th day of November, 2012, commencing at 1:05 p.m.

I further certify that I am not a relative or employee or attorney or counsel of any of the parties, or a relative or employee of such attorney or counsel, or financially interested, directly or indirectly, in this action.

In witness whereof, I have hereunto set my hand and affixed my seal of office on this 26th day of November, 2012.

Dawn M. Lahti

STATE OF WISCONSIN — DAWN M. LAHTI — NOTARY PUBLIC

DAWN M. LAHTI, RPR
Certified Realtime Reporter
Notary Public

My commission expires April 17, 2016.

CORRECTIONS TO DEPOSITION

The witness, Deborah Luther, states he/she wishes to make the following changes in testimony as originally given:

| PAGE | LINE | SHOULD READ | REASON |
|---|---|---|---|
| 6 | 22 | Sandi Scott-Tyus -- Sandi Scott | spelling |
| 7 | 23 | Sandi Scott | spelling |
| 8 | 6 | Life Office Management Association | correct name |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Acknowledged before me on the 14th day of December 2012. Karen L Ziarek Karen L Ziarek commission expires 5/16/2014 | KAREN L. ZIAREK NOTARY PUBLIC STATE OF WISCONSIN |
| | | | |
| | | | |
| | | | |
| | | | |

RECEIVED DEC 14 2012 By GRC

Deborah L Luther 12/14/12

Signature Date

201 356 9085 p.1

# MESSAGE CONFIRMATION

09/29/2005 03:46
ID=LEHMAN

| DATE | S,R-TIME | DISTANT STATION ID | MODE | PAGES | RESULT | |
|---|---|---|---|---|---|---|
| 09/29 | 02'04" | 919149464959 | TX | 05 | OK | 0000 |

09/29/2005 03:43 LEHMAN → 919149464969 NO.302 D01

Northwestern Mutual
720 East Wisconsin Avenue
Milwaukee, WI 53202

(914) 946-4969

EXHIBIT Luther 5 11-20-12 DJ
GRAMANN REPORTING, LTD.

## CHANGE OF CLIENT INFORMATION

Check one or more:

☐ Name Change ☐ Address Change ☐ New Payer

POLICY OR ISA NUMBER: 16-579-951

FORMER NAME (if appropriate):

☒ MR ☐ MRS ☐ MS ☐ DR ☐ OTHER

NAME (Please Print) (FIRST-MIDDLE-LAST): David Morley Litt

STREET ADDRESS: 253 W 73rd, apt 13-H

CITY: New York STATE: NY ZIP CODE: 10023

DAYTIME PHONE NUMBER: ( 212 ) 526-6662

TAXPAYER ID NUMBER:

DATE OF BIRTH (MM/DD/YYYY): 11 / 3 / 1966

☒ MALE ☐ FEMALE

This change applies to: ☒ Self Only ☐ Whole Family

Please help us by listing others in your household this change applies to:

| NAME | POLICY OR ISA NUMBERS |
|---|---|
| | |
| NAME | POLICY OR ISA NUMBERS |
| | |
| NAME | POLICY OR ISA NUMBERS |

(914) 946-4969

Northwestern Mutual
720 East Wisconsin Avenue
Milwaukee, WI 53202

## CHANGE OF CLIENT INFORMATION

Check one or more:

☐ Name Change ☐ Address Change ☐ New Payer

| POLICY OR ISA NUMBER | FORMER NAME (if appropriate) |
|---|---|
| 16-579-951 | |

☒ MR ☐ MRS ☐ MS ☐ DR ☐ OTHER ____________

NAME (Please Print) (FIRST-MIDDLE-LAST)
David Morley Litt

STREET ADDRESS
253 W 73rd, apt 13-H

| CITY | STATE | ZIP CODE |
|---|---|---|
| New York | NY | 10023 |

| DAYTIME PHONE NUMBER | TAXPAYER ID NUMBER | DATE OF BIRTH (MM/DD/YYYY) | |
|---|---|---|---|
| ( 212 ) 526-6662 | | REDACTED | ☒ MALE ☐ FEMALE |

This change applies to: ☒ Self Only ☐ Whole Family

Please help us by listing others in your household this change applies to:

| NAME | POLICY OR ISA NUMBERS |
|---|---|
| | |
| | |
| | |
| | |

## NETWORK OFFICE BLOCK/TRANSFER

☐ I'd like to continue working with my current Northwestern Mutual Financial Representative. Do not transfer my records.

☐ Transfer my records to the Network Office nearest to my home.

☒ Transfer my records to Gil Elmaleh (FINANCIAL REPRESENTATIVE NAME) whose F.R. number is ________ (5 DIGIT, in Network Office ________ (3 DIGIT GA

☒ Additional instructions I would like to change the benficiary on my policy to Tracy Copple

[signature] SIGNATURE OF OWNER/PAYER

09/29/2005 DATE (MM/DD/YYYY)

18-1480-01 (0199) FE

720 East Wisconsin Avenue
Milwaukee, WI 53202

# DESIGNATION OF BENEFICIARIES BY OWNER FOR DEATH PROCEEDS ONLY

| APPLICATION OR POLICY NUMBER(S) | INSURED NAME(S) |
|---|---|
| 16-579-951 | David M Litt |

- This revokes all prior beneficiary designations for death proceeds and elections of payment plans for them.
- Please include the address for each designated beneficiary on the *Beneficiary Information* sheet.

**DIRECT BENEFICIARIES** *(Please print) This designation is* ***REQUIRED.***

| FIRST NAME – INITIAL – LAST NAME | RELATIONSHIP TO INSURED | DATE OF BIRTH (MM/DD/YYYY) |
|---|---|---|
| Tracy Lynn Copple | Wife | 02/18/1970 |
| | | |
| | | |
| | | |
| | | |

*Check box 1 to provide for children of a deceased direct beneficiary. Use only if direct beneficiaries are named.*

☐ 1. **Per Stirpes**, as defined in Provision 11 of the *Additional Beneficiary Provisions* section of this form.

**CONTINGENT BENEFICIARIES** *(Please print) This designation is* ***OPTIONAL.***

| FIRST NAME – INITIAL – LAST NAME | RELATIONSHIP TO INSURED | DATE OF BIRTH (MM/DD/YYYY) |
|---|---|---|
| Steven P Litt | Brother | 11/03/1966 |
| | | |
| | | |
| | | |

*Check box 2 to include all children of the Insured as contingent beneficiaries without naming them, or to add to the contingent beneficiaries named.*

☐ 2. and all (other) **children** of the Insured.

*Check box 3 to provide for children of a deceased contingent beneficiary. Use only if contingent beneficiaries are named and/or box 2 is checked.*

☐ 3. **Per Stirpes**, as defined in Provision 11 of the *Additional Beneficiary Provisions* section of this form.

**FURTHER PAYEES** *(Please print) This designation is* ***OPTIONAL.***

| FIRST NAME – INITIAL – LAST NAME | RELATIONSHIP TO INSURED | DATE OF BIRTH (MM/DD/YYYY) |
|---|---|---|
| | | |
| | | |

☐ **Deferral of Payment** – Insert number of days (not to exceed more than 180) ________ . This option is defined in Provision 8 of the *Additional Beneficiary Provisions* section of this form.

- ***The undersigned requests and directs the Company to make the provisions on the reverse side or on page 2 of this form a part of the policy.***

| Signature of Personal Owner(s) | Date Signed | OR Signature of Business/Entity/Trust Owner |
|---|---|---|
| [signature] | 09/27/2005 MM/DD/YYYY | Please PRINT name of Business/Entity/Trust |
| | | Authorized Company Representative/Trustee Signature |
| | | Authorized Company Representative/Trustee Signature |

- For policies issued in Massachusetts, a witness is mandatory and a named beneficiary may not be a witness.

WITNESS SIGNATURE ______

**FOR HOME OFFICE USE**

Form Recorded and Endorsement Waived

Date ________

The Northwestern Mutual Life Insurance Company

By ________

## ADDITIONAL BENEFICIARY PROVISIONS

**1. INTEREST INCOME PLAN**

The Interest Income Plan (Option A) will be in effect if no payment plan has been elected. Interest will accumulate from the date of death until a payment plan is elected or the proceeds are withdrawn in cash.

**2. SUCCESSION IN INTEREST OF BENEFICIARIES**

Unless this form is completed otherwise, the proceeds will be payable as follows:

**Direct Beneficiaries** The proceeds of this policy will be payable in equal shares to the direct beneficiaries who survive and receive payment. If a direct beneficiary dies before he or she receives all or part of his or her full share, the unpaid part of his or her share will be payable in equal shares to the other direct beneficiaries who survive and receive payment.

**Contingent Beneficiaries.** At the death of all of the direct beneficiaries, the proceeds, or the present value of any unpaid payments under a payment plan, will be payable in equal shares to the contingent beneficiaries who survive and receive payment. If a contingent beneficiary dies before he or she receives all or part of his or her full share, the unpaid part of his or her share will be payable in equal shares to the other contingent beneficiaries who survive and receive payment.

**Further Payees.** At the death of all of the direct and contingent beneficiaries, the proceeds, or the present value of any unpaid payments under a payment plan, will be paid in one sum:

- in equal shares to the further payees who survive and receive payment; or
- if no further payees survive and receive payment, to the estate of the last to die of all of the beneficiaries who survive the Insured.

**Owner or Owner's Estate.** If no beneficiaries survive the Insured, the proceeds will be paid to the Owner or to the Owner's estate.

**3. MARITAL DEDUCTION** (For spouse of Insured as direct beneficiary)

**Power to Appoint.** The spouse of the Insured will have the power alone and in all events to appoint all amounts payable to the spouse under the policy if:

- the Insured just before his or her death was the Owner; and
- the spouse is a direct beneficiary; and
- the spouse survives the Insured.

**To Whom Spouse Can Appoint.** Under this power, the spouse can appoint:

- to the estate of the spouse; or
- to any other persons as contingent beneficiaries and further payees.

**Effect of Exercise.** As to amounts appointed, the exercise of this power will:

- revoke any other designation of beneficiaries;
- revoke any election of payment plan as it applies to them; and
- cause any provision to the contrary in Provision 2 to be of no effect.

**4. TRUSTEE AS BENEFICIARY**

If a trustee is named as a beneficiary and no qualified trustee makes claim to the proceeds, or to the present value of any unpaid payments under a payment plan, within one year after payment becomes due to the trustee, or if satisfactory evidence is furnished to the Company within that year showing that no trustee can qualify to receive payment, payment will be made as provided in Provision 2 as though the trustee has not been named.

The Company will be fully discharged of liability for any action taken by the trustee and for all amounts paid to, or at the direction of, the trustee and will have no obligation as to the use of the amounts. In all dealings with the trustee the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

**5. OWNER'S RIGHT TO CHANGE BENEFICIARIES**

The right to change beneficiaries is reserved to the Owner.

**6. EFFECTIVE DATE**

A naming or changing of a beneficiary will be made on receipt at the Home Office of a written request that is acceptable to the Company. The request will then take effect as of the date it was signed. The Company is not responsible for any payment or other action taken by it before receipt of the request.

**7. MINIMUM PAYMENT**

The Company may limit the election of a payment plan to one that results in payment of at least $50, unless the policy provides otherwise.

If payments under a payment plan are or become less than $50, the Company may change the frequency of payments. If the payments are being made once every 12 months and are less than $50, the Company may pay the present value or the balance of the payment plan.

**8. DEFERRAL OF PAYMENT**

Proceeds will be paid in accordance with the terms of the policy and this form, except that no payment will be made to a beneficiary, other than the Owner or a trustee until the expiration of the selected number of days after the death of the Insured. If that beneficiary does not survive this period, payment will be made as though the beneficiary had died before the Insured, and Provision 3 (Marital Deduction) will be void as to that beneficiary.

**9. POLICY ENDORSEMENT**

The Company may require that the policy be sent to it for endorsement to show any change.

**10. GENERAL**

- The interest of any beneficiary will be subject to any collateral assignment made either before or after the beneficiary is named.
- So far as allowed by law, no amount payable under this policy will be subject to the claims of creditors of a beneficiary.
- If a payment plan is in effect and the payment is to be made in one sum, the amount to be paid will be the present value or the balance of the payment plan.
- If the terms of this form require the Company to determine questions of fact, decisions made by the Company based on evidence satisfactory to it will be conclusive and will fully protect the Company.
- If this form applies to more than one policy, it applies to the policies as a group and not to each policy individually.
- The Company will be fully discharged of liability for any action taken by this beneficiary and for all amounts paid to, or at the direction of this beneficiary and will have no obligation as to the use of the amounts.

**11. DEFINITIONS** – The following terms are defined as used in this form.

**"Beneficiaries"**: includes direct beneficiaries, contingent beneficiaries, and further payees.

**"Corporation"**: includes its successors

**"Insured"**: means "Annuitant" when the form applies to an annuity contract.

**"Children"**, **"Lawful Children"**, and **"Issue"**: includes child and any legally adopted child.

**"Descendants"**: means the issue of the named party, per-stirpes.

**"Heirs"**: means those persons, including the surviving spouse, if any, entitled to receive the property of the descendant under the laws of intestate succession.

**"Owner"**: means "Insured" in Provision 2 when this form is used for a policy owned by a qualified Retirement Trust.

**"Per Stirpes"**: means that Provision 2 on this form is modified so that, no matter when a designated beneficiary dies, any amount that would have been paid to that beneficiary, if living, will be paid in one sum and in equal shares to the children of that beneficiary who survive and receive payment.

**"Survive"**: means a beneficiary must survive the Insured and receive payment prior to his or her death.

**"Trust Agreement"**: includes any modified or substituted agreement.

**"Trustee"**: means the named trustee or successor in trust. When a trust is designated as owner, the trustee will be vested with the power to take all policy actions and the Company will be fully protected when acting as directed by said trustee.

**"UTMA/UGMA"**: means the Law of the named state that applies to a gift of insurance proceeds to a minor whether it be titled Uniform Transfers to Minors Act or Uniform Gifts to Minors Act. If the Custodian is named for more than one beneficiary the Custodian will act separately for each beneficiary.

## AMENDMENT OF POLICY PROVISIONS

**A. Policies Numbered below 4,800,000**

The policy is amended to:

(1) delete any provisions that require the policy to be endorsed with regard to a request for a designation or change of beneficiary or for the election or change of payment plan.

(2) provide that a payment plan for death proceeds will take effect on the date of death of the Insured if it is elected, and the election is received at the Home Office, while the Insured is living; in all other cases, the payment plan will take effect on the date that the election is received at the Home Office, or on a later date if requested.

(3) provide that the Company is not responsible for any payment or other action that is taken by it before the receipt of the election.

**B. Policies Numbered below 5,500,000**

Provisions in the policy regarding surrender are amended to:

(1) delete requirements that the policy be sent to the Company;

(2) provide that the Company may require that the policy be sent to it.

720 East Wisconsin Avenue
Milwaukee, WI 53202

# BENEFICIARY INFORMATION

(Do not use this sheet to designate beneficiaries.)

| APPLICATION OR POLICY NUMBER(S) | INSURED NAME(S) |
|---|---|
| 16-579-951 | DAVID M LITT |

To expedite payment at the time of a claim, please help us by providing the following for each beneficiary named on the Designation of Beneficiaries form. When completed, this form should be returned with the beneficiary change form to:

**Beneficiary & Title Division, Northwestern Mutual, P.O. Box 2914, Milwaukee, WI 53201-9834.**

| BENEFICIARY NAME & SOCIAL SECURITY NO. *OR* TAXPAYER ID | FULL ADDRESS |
|---|---|
| Name: Tracy Copple<br>SSN/Taxpayer ID: REDACTED | 45 West Beechcroft<br>Short Hills, NJ 07078 |
| Name: STEVEN P LITT<br>SSN/Taxpayer ID: REDACTED | REDACTED |
| Name:<br>SSN/Taxpayer ID: | |
| Name:<br>SSN/Taxpayer ID: | |
| Name:<br>SSN/Taxpayer ID: | |
| Name:<br>SSN/Taxpayer ID: | |
| Name:<br>SSN/Taxpayer ID: | |
| Name:<br>SSN/Taxpayer ID: | |
| Name:<br>SSN/Taxpayer ID: | |
| Name:<br>SSN/Taxpayer ID: | |

# INSTRUCTIONS AND SAMPLE DESIGNATIONS FOR BENEFICIARY CHANGE

## INSTRUCTIONS

- **This form revokes all previous beneficiaries.** If beneficiaries previously named are to be included in this designation, they should be renamed on this beneficiary form.
- **When a Business, Entity or Trust is the Owner,** the full name of the Business, Entity or Trust should be inserted above the signature of an Authorized Company Representative or Trustee(s) empowered to sign on behalf of the trust.

  If you are acting on behalf of the Owner in a representative capacity (i.e., attorney-in-fact, guardian, conservator, etc.), please provide your title and the document supporting your authority.
- **Deletions and Alterations** – All deletions and alterations made on form 90-1197 must be initialed by the Owner.
- **Attachments to the form are acceptable.** The attachments should include the policy number(s), Insured name(s), be dated the same date as the beneficiary form, and signed by the policyowner.
- **Beneficiary Information Sheet** – Use this form only to provide additional information needed regarding the named beneficiaries, such as Social Security numbers and address information. **This form cannot be used to designate additional beneficiaries.**
- **Disability Policies –** This form cannot be used for Disability Income policies because they do not provide life insurance death proceeds.
- **IRA and TDA Policies –** If the Owner's spouse is not named the sole direct beneficiary of an IRA or a TDA policy, the Owner should consult with his or her own attorney as to the effect of the designation in view of federal income tax law.
- **Pension Plan Policies (including HR-10s)** – The Plan Trustee must be the beneficiary of policies issued under a pension plan. Personal beneficiaries should be filed with the Plan Trustee.
- **Community/Marital Property States** – The Owner should consult with his or her own attorney as to the appropriateness of this designation under the community/marital property laws in his or her own state.
- **Witness Signature** – For life insurance and endowment policies issued in Massachusetts, Massachusetts law requires that the Owner's signature to a beneficiary change be witnessed by a person who is not a beneficiary named on the form.

## SAMPLE DESIGNATIONS

1. **Estate.**
   Estate of John Doe, the Insured.
2. **Estate of last to die of Insured and spouse.**
   Direct Beneficiary:
   Mary Doe, wife of the Insured.
   Contingent Beneficiary:
   Estate of the last to die of John Doe and Mary Doe.
3. **Testamentary Trust.**
   Trustee under the Will of the Insured.
4. **Trustee under Will of last to die of Insured and spouse.**
   Direct Beneficiary:
   Mary Doe, wife of the Insured.
   Contingent Beneficiary:
   Trustee under the Will of the last to die of John Doe and Mary Doe
5. **Living Trust: Personal Trustee.**
   Sam Doe, Trustee of the John Doe Trust dated ________.
6. **Living Trust: Corporate Trustee.**
   XYZ Bank, a Wisconsin Corporation, 123 N. 4th St., Milwaukee, Wisconsin 53202, Trustee of the John Doe Trust dated ____________.
7. **Specific amount to one beneficiary, balance to second beneficiary.**
   $20,000, or the entire amount if less than said amount, to Jane Doe, wife of the Insured, and the balance to Sally Doe, mother of the Insured.
8. **Brothers and Sisters.**
   All brothers and sisters of the Insured, born of the marriage of or legally adopted by Sam Doe and Sally Doe prior to the death of the Insured.
9. **Percentages: One person per percentage**
   75% to Jane Doe, wife of the Insured, and 25% to Sally Doe, mother of the Insured.
10. **Percentages: One percentage for two people or the survivor.**
    50% to Jane Doe, wife of the Insured, and 50% to Sam Doe and Sally Doe, parents of the Insured, or the survivor.
11. **Owner a Corporation including Non-profit, Partnership, LLP and LLC.**
    - ABC Company, 123 Main St., Milwaukee, WI 53201
    - Acme University, a non-profit, 123 Main St., Milwaukee, WI 53201
    - Jones, Smith and Jones, Milwaukee, WI, a Partnership
    - Jones & Smith, LLP, 123 Main St., Milwaukee, WI 53201
    - ABC Company, LLC, 123 Main St., Milwaukee, WI 52301
12. **Owner of a qualified Pension or Profit Sharing Plan, with an individual or corporate trustee.**
    Trustee of the XYZ Company Pension Plan

Northwestern Mutual

720 East Wisconsin Avenue
Milwaukee, WI 53202

# DESIGNATION OF BENEFICIARIES BY OWNER FOR DEATH PROCEEDS ONLY

| APPLICATION OR POLICY NUMBER(S) | INSURED NAME(S) |
|---|---|
| 16-579-951 | David M Litt |

- This revokes all prior beneficiary designations for death proceeds and elections of payment plans for them.
- Please include the address for each designated beneficiary on the *Beneficiary Information* sheet.

**DIRECT BENEFICIARIES** *(Please print) This designation is REQUIRED.*

| FIRST NAME - INITIAL - LAST NAME | RELATIONSHIP TO INSURED | DATE OF BIRTH (MM/DD/YYYY) |
|---|---|---|
| Tracy Lynn Copple | Wife | 02/18/1970 |
| | | |
| | | |
| | | |

*Check box 1 to provide for children of a deceased direct beneficiary. Use only if direct beneficiaries are named.*

☐ 1. **Per Stirpes**, as defined in Provision 11 of the *Additional Beneficiary Provisions* section of this form.

**CONTINGENT BENEFICIARIES** *(Please print) This designation is OPTIONAL.*

| FIRST NAME - INITIAL - LAST NAME | RELATIONSHIP TO INSURED | DATE OF BIRTH (MM/DD/YYYY) |
|---|---|---|
| Steven P Litt | Brother | 11/03/1966 |
| | | |
| | | |

*Check box 2 to include all children of the Insured as contingent beneficiaries without naming them, or to add to the contingent beneficiaries named.*

☐ 2. and all (other) children of the Insured.

*Check box 3 to provide for children of a deceased contingent beneficiary. Use only if contingent beneficiaries are named and/or box 2 is checked.*

☐ 3. **Per Stirpes**, as defined in Provision 11 of the *Additional Beneficiary Provisions* section of this form.

**FURTHER PAYEES** *(Please print) This designation is OPTIONAL.*

| FIRST NAME - INITIAL - LAST NAME | RELATIONSHIP TO INSURED | DATE OF BIRTH (MM/DD/YYYY) |
|---|---|---|
| | | |
| | | |

☐ **Deferral of Payment** – Insert number of days (not to exceed more than 180) ______. This option is defined in Provision 8 of the *Additional Beneficiary Provisions* section of this form.

- *The undersigned requests and directs the Company to make the provisions on the reverse side or on page 2 of this form a part of the policy.*

| Signature of Personal Owner(s) | Date Signed | OR Signature of Business/Entity/Trust Owner |
|---|---|---|
| [signature] | 07/27/2005 MM/DD/YYYY | Please PRINT name of Business/Entity/Trust |
| | | Authorized Company Representative/Trustee Signature |
| | | Authorized Company Representative/Trustee Signature |

- For policies issued in Massachusetts, a witness is mandatory and a named beneficiary may not be a witness.

WITNESS SIGNATURE ______

FOR HOME OFFICE USE

Form Recorded and Endorsement Waived

The Northwestern Mutual Life Insurance Company

Date ______ By ______