UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
...........................................................X
THE NORTHWESTERN MUTUAL LIFE

INSURANCE COMPANY,                              12 Civ. 2514 (PKC) (HBP)

                Plaintiff,

- against -
                                           **AFFIRMATION IN**
                                           **OPPOSITION**

STEVEN LITT AND TRACY COPPLE-LITT,

                Defendants.
...........................................................X

      Richard S. Peskin, an attorney duly admitted to practice law before the United States District Court for the Southern District of New York, herby affirms under penalty of perjury as follows:

1. I am the attorney for David Litt's widow, co-Defendant Tracy Copple Litt and I make this Affirmation in Opposition to Steven Litt's pre trial submission which is framed and titled as a summary judgment motion.

2. As to whether the fax number to which the September 29, 2005 change of beneficiary form and concurrently dated Network Block Transfer form was sent, was that of the John Blumberg Network Office, which fact my adversary does not concede, reference is made not only to Exhibit "G" of our pre trial submission, which was the result of a reverse number internet search and proves the supposition, but also to the more compelling Exhibits "H" and "I" which note that

exact fax number in the address block of the e mail of Mr. Gil Elmaleh's assistant Sarah Miller, as belonging to that office.

3. There can thus remain no contention that the fax was sent to and received by a Network Office of Northwestern Mutual Life Insurance Company ("NML") during the insured's life.

4. The fax confirmation sheet reflects a total of 5 pages having been successfully sent the content of which 5 pages can be discerned by the following factors:

(a). The fax confirmation sheet itself contains a copy of the bottom half of the first transmitted page; to wit, the Network Block Transfer form containing the typewritten insertion of the insured that he wished to change his beneficiary to Tracy Copple. This particular form, (the only one without resort to extrinsic evidence, that we positively know for sure was sent and received), in and of itself, on its face, is sufficient to demonstrate the insured's expressed intent by virtue of the referred to typewritten insertion over his signature.

(b). The date on the Network Block Transfer form is the same as the date of the change of beneficiary form indicating that they were completed at the same time and transmitted together.

(c). The fact that the insured's agent was in fact changed pursuant to his instructions on the Network block Transfer form, a mere 5 days after the day it was sent, indicates that it was sent and received on the date signed.

(d). The date on the forms, September 29, 2005, was mere weeks after the insured married Tracy Copple. This fact, coupled with Ms. Copple Litt's testimony that her husband had promised to so change his beneficiary after their marriage, lends credence to the fact that the transmitted package included the change of beneficiary form.

(e). The package sent on September 29, 2005 was virtually identical to the same forms transmitted by his agent to the insured on November 30, 2007 when he once again requested a change of beneficiary form (minus the Network Block Transfer form which was no longer needed at that time).

5. Lehman Brothers, the investment firm at which the insured David Litt was employed at the time of the fax transmission, is no longer in business and David Litt, the sender of the fax, is no longer alive to testify as to the circumstances of the transmittal. Authentication as a Lehman Brothers business record is thus not possible necessitating reliance on F.R.E. Rule 807 as more fully set forth in the Pretrial Memorandum of Law of Tracy Copple Litt.

6. Opposing counsel in citing *Connecticut Gen. Life Ins. Co. v. Boni*, 48 A.D.2d 621, 368 N.Y.S.2d 1 (App. Div. 1975), attempts to equate a bald faced allegation that someone transmitted a document to another which the recipient denies receiving, with the undeniable act of sending a fax supported by actual proof that the fax was not only transmitted but actually **received** by virtue of the fax confirmation sheet (which is virtually equivalent to a signed delivery receipt of an overnight mail package) notwithstanding that even the mere posting of a letter gives rise to a presumption of receipt.

7. Steven Litt cites *Boni*, a summary judgment case, to stand for the principle that where the insured alleges that he gave a change of beneficiary form to a third party and that form was ultimately never delivered to the insurer, summary judgment should be granted in favor of the recorded beneficiary.

8. That case however is easily distinguishable from the case at bar. In *Boni*, the court noted that the change of beneficiary form was defective on its face as it lacked a witness. (In the present case no witness was required). Further in *Boni* the insured only delivered the form to a shop steward (clearly not an agent of the insurance company as in the present case). The court there held that not only was the allegation of receipt by the shop steward not factually supported, as the steward denied delivery, but that his duties did not encompass any obligation, legal or otherwise to transmit it on to the insurer. There the allegation of delivery to the steward was merely contained in an attorney affidavit. Here however evidence exists not only that the change of beneficiary form was in acceptable form for recording by the insurer, but that said document **was sent and received** by an agent of the insurer whose duties and responsibilities, as admitted by the agent in his affidavit, would have been to transmit the document to the insurance company home office.

9. Mr. Elmaleh's self serving denial in failing to recall the receipt of that facsimile sent 7 years earlier, under these circumstances is not surprising. His admission of receipt and subsequent failure to have transmitted it to the NML home office, as he states would have been proper protocol, would be effectively an admission of his own negligence.

10. Counsel likewise misinterprets David Litt's attempts to seek to change his beneficiary when he indicates in 2008 that his beneficiary designation is not up to date, in response to a questionnaire sent to him by NML. That response also served as an affirmative act evidencing his intent by which he advised his insurance company representative now for the third time, that notwithstanding his 2 prior attempts, they still have not effectuated his intent. The onus then continued on the agent to inquire further if necessary and to complete the change requested; which was never done.

11. In *Transamerica Financial Life Ins. Co v. Simmonds*, 21 Misc.3d 1101 (A), 873 N.Y.S.2d 238 (2008) the court citing *Kornacki v. Mutual Life Ins. Co. of New York*, 195 A.D.2d 847, 848 (3d Dept. 1993), stated:

> "the formal procedures for a change of beneficiary are for the benefit of the insurer; thus, strict compliance with the formalities to change the beneficiary can be effectively waived by the insurer and the proceeds can be distributed with the insured's manifest intent."

12. The testimony of the NML representatives Ms. Junemann and Ms. Luther quoted by opposing counsel in an effort to persuade the Court that the decedent did not strictly comply with NML procedures to change a beneficiary thus becomes largely irrelevant as strict compliance to the letter of their rules is **not** the standard to be applied once NML commenced the instant interpleader action allowing the competing claims to the proceeds to be resolved among the interested parties. The court in *Lincoln Life and Annuity Company of New York v. Caswell*, 31A.D.3d 1, 813 N.Y.S.2d 385 (1st Dept. 2006) in citing *Schoenholz v. New York Life Ins. Co.*, 234 N.Y. 24, 29-30 (1922), mot for rearg den 234 N.Y. 605 and *McCarthy v. Aetna Life Ins. Co.*,

92 N.Y.2d at 442, 704 N.E.2d 557 (N.Y. 1998) describes the evolution of the law in this regard, as follows:

> "Over the years, there has been some relaxation of the requirement of strict compliance with the procedures specified by an insurance policy for designating or changing beneficiaries. At first, it was held that 'exact compliance with the provisions of the policy [would be excused] where the attempt at such compliance has been substantial and its full success prevented by some cause not within the control of the person attempting to make the change'" [citing *Schoenholz*].
>
> "As the law has evolved, the courts,...have come to hold that exact compliance with the contractual procedure will be deemed waived where the insurer, faced with conflicting colorable claims to the same policy proceeds, pays the proceeds into court in an interpleader action so that the opposing claimants may litigate the matter between themselves" [citing *McCarthy* and *Cable v. Prudential Ins. Co. of Am.*, 89 A.D.2d 636, 636, 453 N.Y.S.2d 86 (1982)]

13. In *Cable*, which can be equated to the facts in this case, the change of beneficiary was given effect where the insured only failed to send the policy to the insurer for endorsement, but otherwise followed the insurance company procedure as set forth in the policy.

14. Opposing counsel goes to great lengths in his Pre Trial Summary Judgment Memorandum Of Law at page 16 thereof, to make my exact point; namely that (1) exact compliance is not required, (2) the standard is substantial compliance defined as an affirmative act by which the insured did all within his power to do to change the beneficiary, (3) the insured's intent is the key to the inquiry, and (4) his intent must have been somehow thwarted. Indeed, David Litt did everything possible to evidence his intention and manifest the intended change.

15. Finally, opposing counsel seems to place some importance on the fact that NML *considered*

the insured's brother Steven Litt as the beneficiary **prior to notice of a competing claim** by the decedent's widow and that NML sent to the insured's brother, a "claim packet" and corresponded with him as to payment elections, etc. Such discussion is completely irrelevant as it all occurred prior to the date that NML was advised of the widow's competing claim.

16. Anything **more** that David Litt could have done, but did not do, would raise the standard from substantial, to strict compliance, which admittedly is not required to effectuate a change of beneficiary where the intent of the insured is clear yet the insurer for one reason or another did not comply with the insured's request.

17. Moreover, substantial compliance need be demonstrated not by a "beyond a reasonable doubt" standard of proof but merely by a preponderance of the evidence.

18. Circumstantial evidence as opposed to direct testimony is an acceptable means by which the Court may discern the insured's intent in attempting to effectuate the beneficiary change.

**WHEREFORE**, it is respectfully requested that this Court grant David Litt's last wish that his wife be awarded the death benefit of his life insurance policy.

Dated: New York, New York
       January 25, 2013

_____
Richard S. Peskin
(RSP3524)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
...................... .................................................X
THE NORTHWESTERN MUTUAL LIFE

INSURANCE COMPANY,                                   12 Civ. 2514 (PKC) (HBP)

Plaintiff,

- against -

STEVEN LITT AND TRACY COPPLE-LITT,

Defendants.

.............................................................X

## AFFIDAVIT IN OPPOSITION TO STEVEN LITT'S SUMMARY JUDGMENT MOTION AND IN FURTHER SUPPORT OF TRACY COPPLE LITT'S PRE TRIAL MEMORANDUM OF LAW

**Richard S. Peskin**
RSP 3524
Attorney for co-Defendant
Tracy Copple Litt
6 East 39th Street, 6th floor
New York, New York, 10016
(212) 867-2468