UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

THE NORTHWESTERN MUTUAL LIFE INSURANCE:
COMPANY,                                        :        12 Civ. 2514 (PKC)(HBP)
                                                :
                          Plaintiff,            :
                                                :
           - against -                          :
                                                :
STEVEN LITT and TRACY COPPLE-LITT,              :
                                                :
                          Defendants.           :

----------------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO TRACY-COPPLE-LITT'S PRE-TRIAL MEMORANDUM

**SATTERLEE STEPHENS BURKE & BURKE LLP**
230 Park Avenue
Suite 1130
New York, New York 10169
(212) 818-9200
*Attorneys for Defendant – Steven Litt*

1585194_4

## TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 3

POINT I.
STEPHEN LITT IS THE DESIGNATED BENEFICIARY ON THE POLICY ......................... 3

    A.    The Policy Unambiguously Requires that the Form Must be  Sent to Northwestern's Home Office During the Decedent's Lifetime ............................................. 3

    B.    Elmaleh Had No Actual or Apparent Authority to Change the Beneficiary on the Policy ...................................................................................................... 6

    C.    Elmaleh Indisputably Never Received the Form .................................................. 10

    D.    The Confirmation is Inadmissible .................................................................... 10

    E.    The Confirmation Should not be Assigned any Evidentiary Value .................... 11

    F.    The Confirmation Does Not Raise a Presumption of Receipt ............................ 12

POINT II.
DECEDENT DID NOT SUBSTANTIALLY COMPLY WITH THE POLICY'S PROVISIONS CONCERNING CHANGING BENEFICIARIES ................................................. 14

CONCLUSION ............................................................................................................ 17

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alghanim v. Alghanim,*
   828 F.Supp.2d 636 (S.D.N.Y. 2011)..................................................................4

*Allegiance Telecom, Inc. v. XO Communications, LLC,*
   2012 WL 1036085 (S.D.N.Y. 2012)...................................................................4

*Babcock v. New York State Office of Mental Health,*
   No. 04 Civ. 2261, 2009 WL 1598796 (S.D.N.Y. Jun. 8, 2009)..............................11

*Cable v. Prudential Ins. Co,*
   89 A.D.2d 636, 453 N.Y.sS.2d .........................................................................15

*Chimart Assoscs. v. Paul,*
   66 N.Y.2d 570, 498 N.Y.S.2d 344 (1986) ..........................................................4

*Conn. Gen. Life Ins. Co. v. Boni,*
   368 N.Y.S.2d 1 (App.Div. 1975) .......................................................................14

*Fink v. Fink,*
   171 N.Y. 616, 64 N.E. 506 (1902) .....................................................................15

*Ford v. Unity Hosp.,*
   32 N.Y.2d 464, 346 N.Y.S.2d 238, 299 N.E.2d 659 (1973).................................6

*Highland Capital Mgmt. v. Schneider,*
   607 F.3d 322 (2d Cir.2010)..........................................................................6, 7, 8

*Hill v. Citibank Corp*
   312 F.Supp.2d 464 (S.D.N.Y. 2004)..................................................................10

*In re Gunter,*
   *389 B.R. 67* (Bkrtcy. S.D. Ohio 2008) ...............................................................12

*John Hancock Life Ins. Co. v. McManus,*
   247 A.D.2d 513, 669 N.Y.S.2d 320 (2 Dept.,1998) .............................................16

*Kam Hing Enterprises, Inc. v. Wal-Mart Stores*
   359 Fed.Appx. 235 (2d Cir. 2010)......................................................................11

*Laouini v. CLM Freight Lines, Inc.,*
   586F.3d 473, 474 (7th Cir. 2009) ....................................................................13

*McCarthy v. Aetna Life Ins. Co.,*
   704 N.E.2d 557 (N.Y. 1998).........................................................................14, 15

*Merrill Lynch Capital Servs. v. UISA Fin.*,
  No. 09–cv–2324, 2012 WL 1202034 (S.D.N.Y. Apr. 10, 2012)............................................7, 8

*Minskoff v. Am. Express Travel Related Servs.*,
  98 F.3d 703 (2d Cir.1996)....................................................................................................7

*People v. Hagan*,
  145 Ill.2d 287, 583 N.E.2d 494 (Ill.,1991) ........................................................................11

*Property Advisory Group, Inc. v. Bevona*,
  718 F. Supp. 209 (S.D.N.Y. 1989) ....................................................................................8, 9

*Reiss v. Societe Centrale du Groupe Des Assurances Nationales*,
  235 F.3d 738 (2d Cir.2000)...................................................................................................8

*Riley & Ephriam Constr. Co. v. United States*,
  408 F.3d 1369 (Fed. Cir. 2005)...........................................................................................12

*Rosenfeld v. Basquiat*,
  78 F.3d 84 (2d Cir. 1996).....................................................................................................16

*Schoenholz v. N.Y. Life Ins. Co.*,
  234 N.Y. 24, 136 N.E. 227 (1922).......................................................................................14

*Sun Life Assur. Co. of Canada (U.S.) v. Gruber*,
  2007 WL 4457771 (S.D.N.Y. 2007).............................................................................14, 16

*Tapper, Evidence from Computers*,
  8 Ga. L. Rev. 562, 595 n. 193 (1974) .................................................................................11

*Total Containment, Inc. v. Environ Prods., Inc.*,
  921 F.Supp. 1355 (E.D.Pa.1995), *aff'd in part and vacated in part on other grounds*,
  106 F.3d 427, 1997 WL 16032 (Fed.Cir.1997) ..................................................................10

*Union Cent. Life Ins. Co. v. Berger*
  2012 WL 4217795 (S.D.N.Y. Sept. 20, 2012)....................................................................15

*White v. Continental Cas. Co.*,
  9 N.Y.3d 264 (2007) ..............................................................................................................4

*William Penn Life Ins. Co. of New York v. Viscuso*,
  569 F.Supp.2d ......................................................................................................................16

**OTHER AUTHORITIES**

Fed.R.Evid. 901 .........................................................................................................................11

Defendant Steven Litt ("Litt") submits this Memorandum of Law in opposition to Defendant Tracy Copple-Litt's ("Copple-Litt") pre-trial Memorandum of Law.

## PRELIMINARY STATEMENT

Copple-Litt's pre-trial submission admits nearly all of the material facts proffered in Litt's pre-trial submission, yet nonetheless claims that she is entitled to the death benefit under David M. Litt's (the "Decedent") life insurance policy with The Northwestern Mutual Life Insurance Company ("Northwestern")(the "Policy").   Copple-Litt's submission, however, reinforces why the death benefit on the Policy should be awarded to Litt.

Copple-Litt admits, as she must, that Section 10.2 of the Policy expressly provides that a "change of beneficiary" is only "made on receipt *at the Home Office* of a written request that is acceptable to the Company" and that where, as here, the Insured was the Owner of the Policy, a change of beneficiary must be made "while the Insured is living." *See* Copple-Litt Pre-Trial Brief ("Copple-Litt Br.").   However, Copple-Litt cannot dispute that Northwestern's Home Office did not receive the alleged September 2005 Change of Beneficiary Form (the "Form") until after the Decedent's death.   Accordingly, under the unambiguous language of the Policy, Litt is entitled to the death benefit.

Burdened by these undeniable dispositive facts, Copple-Litt desperately tries to avoid their implication by distorting the plain language of the Policy and, in the alternative, seeking equitable relief under the doctrine of substantial compliance.  First, Copple-Litt argues that Section 10.2 of the Policy does not mean what it says and argues that extra-contractual Northwestern documents support her own self-serving and unsupported "interpretation" of the Policy.  As discussed below, however, where contractual provisions are unambiguous, as is the

case here, the Court should not resort to extrinsic evidence, such as the "evidence" proffered by Copple-Litt.

Further, even if the Court were to accept Copple-Litt's interpretations of the Policy, she nonetheless is not entitled to the death benefit. Copple-Litt argues that the alleged receipt by Northwestern servicing agent Gil Elmaleh ("Elmaleh") of the Form was sufficient to effectuate a change of beneficiary on the Policy. Aside from the fact that the Policy unequivocally dictates that a change can only occur upon receipt of the Form by Northwestern's "Home Office", the Policy also states "[a] change in the policy is valid only if it is approved by an officer of the Company," *id.*, Section 1.2, and it is undisputed that a change of beneficiary is a change to the Policy.

Alternatively, Copple-Litt claims, in contradiction of the plain language of the Policy, that receipt of the Form by Elmaleh pre-death and by Northwestern's Home Office post-death is sufficient to effectuate the change of beneficiary. Elmaleh, however, has stated in a sworn affidavit that he never received the Form. In response, Copple-Litt proffers only a fax confirmation, purportedly from Lehman Brothers (the "Confirmation"), which allegedly evidences that Decedent sent the Form to Elmaleh in September 2005. Copple-Litt, however, to date, has not authenticated the Confirmation through a Lehman Brothers witness. Moreover, even if Copple-Litt properly authenticates the Confirmation, it does not prove that the Form was faxed by Lehman Brothers to Elmaleh.[1] Accordingly, even under her specious interpretation of the change of beneficiary provisions in the Policy, Copple-Litt is not entitled to the death benefit.

---

[1] Further, as discussed below, the law is clear that a fax confirmation does not create a presumption of receipt by Elmaleh.

Copple-Litt's substantial compliance claim is equally unpersuasive. In fact, Copple-Litt's pre-trial submission only undermines her claim. First, she admits the applicability of binding precedent that requires a decedent to have done all that was reasonably possible to show his intentions and to have made every reasonable effort to comply with policy requirements. (Copple-Litt Br., p. 14). Next, Copple-Litt admits that in November 2007, Decedent "apparently realiz[ed] from the annual policy statement he was sent that the beneficiary had in fact not been changed," (Copple-Litt Br., p. 16), and yet the Decedent did not: (i) re-send the Form to Northwestern; (ii) execute a new change of beneficiary form; or (iii) take any action whatsoever to change the beneficiary of the Policy to Copple-Litt.

Lastly, Copple-Litt agrees that Decedent admitted that his beneficiary designations were not up to date in or about 2008 (Copple-Litt Br., p. 16-17), yet, once again, took no action to change the beneficiary designation to Copple-Litt *(id.)*. Accordingly, despite the requirements of legal authority Copple-Litt cites, Decedent admittedly did not take all steps possible to change the beneficiary on the Policy, and Copple-Litt's substantial compliance claim fails. Accordingly, Litt, who is currently, and has at all times been, the beneficiary of the Policy, should be awarded the death benefit.

## ARGUMENT

## POINT I.

## STEPHEN LITT IS THE DESIGNATED BENEFICIARY ON THE POLICY

### A.   The Policy Unambiguously Requires that the Form Must be Sent to Northwestern's Home Office During the Decedent's Lifetime

The unambiguous terms of the Policy require that a completed change of beneficiary form must be filed with Northwestern's Home Office while the owner is living. "As

3

with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *White v. Continental Cas. Co.*, 9 N.Y.3d 264, 267 (2007) (citations omitted). "Thus, if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Id.* Additionally, a court should not refer to extrinsic evidence when a contract is unambiguous on its face. *Alghanim v. Alghanim*, 828 F.Supp.2d 636, 656 (S.D.N.Y. 2011). As this Court held in *Allegiance Telecom, Inc. v. XO Communications, LLC*, 2012 WL 1036085 (S.D.N.Y. 2012), "[i]nterpretation of an unambiguous contract provision is a function for the court, and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument", *quoting Chimart Assoscs. v. Paul*, 66 N.Y.2d 570, 572-73, 498 N.Y.S.2d 344 (1986).

Here, Section 10.2 of the Policy unambiguously provides in the "By Owner" section that a "change of beneficiary" is "made on receipt *at the Home Office* of a written request that is acceptable to the Company" and that where, as here, the Insured was the Owner of the Policy, the "change" of beneficiary must be made "while the Insured is living." *See* Policy, annexed to the Affidavit of Walter A. Saurack, sworn to on January 9, 2013 and submitted in support of Litt's initial pre-trial submission (the "Saurack Aff."), at Exh. D, Section, 10.2 (emphasis supplied). Accordingly, the Form had to be received and reviewed by Northwestern's Home Office prior to Decedents' death or else a "change" of beneficiary could not be made.

Given the unequivocal clarity of these provisions, the Court should not address extrinsic "evidence" proffered by Copple-Litt. In any event, Copple-Litt's extrinsic evidence does not support her position that receipt of the Form by servicing agent Elmaleh during Decedent's lifetime complied with the Policy's change of beneficiary provisions. Copple-Litt

4

cites a Northwestern policy statement concerning Designation of Beneficiary Designated by Policyowner. *See* Copple-Litt Br., p. 6-7 and Copple-Litt Exh. K. The policy cited, however, is entirely consistent with the Policy's requirement that changes must be made during a decedent's lifetime. The policy cited by Copple-Litt simply dictates that only a policy owner "other than the insured" can designate a beneficiary within 60 days after the insured's death.

Further, if the Court decides to consider extrinsic evidence, both Northwestern representatives who were deposed in this matter testified in contradiction to Copple-Litt's self-serving interpretation of the Policy and confirmed that a change of beneficiary has to be made while the insured is alive. Gail Junemann of Northwestern confirmed the terms of the Policy at her deposition, testifying:

> Q:   In order for the completed form to be acceptable, it has to be received by the home office at the time that the insured is alive, correct?
>
> A:   Yes.

*See* Deposition Transcript of Gail Junemann, annexed to the Saurack Aff. at Exh. A ("Junemann Tr., at, 98:2-5; *See also* Junemann Tr.,41:6-9 ("Q. If the insured is the owner, then the change in designation has to be made while the insured is alive, correct? A. Correct."); *Id.* at 36:22-24 (Q. "So a change of beneficiary form had to be received prior to the date of his death? A. Yes.").

Similarly, Deborah Luther of Northwestern testified as follows:

> Q:   And was there any reason why Northwestern did not consider this form received by September 29, 2011 to be effective so far as changing the beneficiary on the Decedent's policy?
>
> A.   Based on the contract language, a beneficiary **designation has to be received in the home office** in a format that's acceptable for recording.
>
> Q.   So the – the change of beneficiary form had to be received by Northwestern while the insured was living?

5

A.   Correct.

Q.   Now when you testified that the change of beneficiary form has to be received by Northwestern while the insured/owner was living, are you referring to Section 10.2 on page 14?

A.   Yes, I am.

*See* deposition transcript of Deborah Luther, annexed to the Saurack Aff ("Luther Tr.") at Exh.F, at 19:24-20:17 (emphasis supplied)(citing Exhibit D and J); *see also* Luther Tr., 28:11 – 13 ("Based on the contract, it needs to be received in the home office prior to the insured's death.").

Since Northwestern's Home Office indisputably did not receive the Form before Decedent's death, *see* Copple-Litt Br., p. 15 ("the form never reached the home office, or it if did, it was never recorded"), under the unambiguous terms of the Policy, the Form never effectuated a change of beneficiary and Litt should therefore be awarded the death benefit on the Policy.

## B.   Elmaleh Had No Actual or Apparent Authority to Change the Beneficiary on the Policy

Copple-Litt attempts to escape the plain language in Section 10.2, by claiming that receipt by Elmaleh during Decedent's lifetime is sufficient to effectuate a change of beneficiary on the Policy.  *See* Copple-Litt Br., p. 22.  Elmaleh, however, had no actual or apparent authority to change the Policy.

### Elmaleh Had No Actual Authority to Change the Policy

"Under New York law, an agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." *See Highland Capital Mgmt. v. Schneider*, 607 F.3d 322, 327 (2d Cir.2010) (citing *Ford v. Unity Hosp.*, 32 N.Y.2d 464, 346 N.Y.S.2d 238, 299 N.E.2d 659 (1973)).  Actual authority "may be express or

6

implied," and in both cases "exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." *Minskoff v. Am. Express Travel Related Servs.*, 98 F.3d 703, 708 (2d Cir.1996). Regardless, "[t]he existence of actual authority depends upon the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship.*"* *Merrill Lynch Capital Servs. v. UISA Fin.*, No. 09–cv–2324, 2012 WL 1202034, at *6 (S.D.N.Y. Apr. 10, 2012).

Here, Elmaleh's contract to act on behalf of Northwestern expressly states that he is <u>not</u> an agent of Northwestern and that he has "no power personally, or on behalf of [Northwestern] to…alter or discharge or waive any terms and conditions of any policy or contract." *See* Elmaleh Affidavit, sworn to on October 23, 2012 ("Elmaleh Aff."), annexed to the Saurack Aff. at Exhibit L at ¶15. *See also* Junemann Tr., Exhibit A to Saurack Aff. at 48:13-16 ("Q. Did Elmaleh during the period in which he was a servicing agent have the power or authority to change the beneficiary on the policy.  A. No.").  Further, it is undisputed that a change of beneficiary is a change to the Policy. *Id.* at 45:9-10. Accordingly, Elmaleh had no actual authority to change the beneficiary on the Policy.[2]

---

[2] The majority of the actual authority cases cited by Copple-Litt are either readily distinguishable or actually contradict Copple-Litt's arguments.  For example, although cited by Copple-Litt, *Highland Capital Management LP v. Schneider*, 607 F.3d 322 (2d Cir. 2010) actually supports Litt's argument that Elmaleh lacked apparent authority.  In *Highland*, the Plaintiff sought to enforce an alleged sale of promissory notes belonging to the defendants to Highland through the defendant's agent, Rauch.  In holding that Rauch did <u>not</u> have actual authority to bind the defendants to the sale alleged by Highland, the Second Circuit relied on a written agreement which clearly demonstrated that Rauch could not bind the Schneiders to any proposed sale without express authorization by the Schneiders to sell the notes at the proposed price. *See Highland* at 327. Here, as with the agreement in *Highland*, the agency agreement between Northwestern and Elmaleh is clear and unambiguous.  The agreement expressly states that Elmaleh <u>cannot</u> makes changes to any policy.

**Elmaleh had no Apparent Authority to Change the Policy**

Copple-Litt also wrongly claims that Elmaleh had apparent authority to change the beneficiary designation on the Policy.

If an agent lacks actual authority, he may still be imbued with authority to bind the principal through the doctrine of apparent authority. An agent may "bind his principal to a contract if the principal has created the appearance of authority, leading the other contracting party to reasonably believe that actual authority exists." *Highland Capital*, 607 F.3d at 328. Under New York law, courts find that apparent authority authorizes an agent to bind its principal when the "principal, either intentionally or by lack of ordinary care, induces a [third party] to believe that an individual has been authorized to act on its behalf." *Merrill Lynch*, 2012 WL 1202034, at *6 (citing *Highland Capital*, 607 F.3d at 328 (citation omitted)); see also *Reiss v. Societe Centrale du Groupe Des Assurances Nationales*, 235 F.3d 738, 748 (2d Cir.2000)

Here, the Policy does not state that receipt by a servicing agent is sufficient to effectuate a change of a beneficiary. Saurack Aff., Exh. D, Section, 10.2. It unambiguously states that the Home Office has to receive the change of beneficiary. *Id.* Further, the Policy says: "[a] change in the policy is valid only if it is approved by an officer of the Company." *Id.,* Section, 1.2. As such, there can simply be no argument that Northwestern created the appearance that Elmaleh had the authority to render changes to the Policy.

Copple-Litt's reliance on the District Court's holding in *Property Advisory Group, Inc. v. Bevona*, 718 F. Supp. 209 (S.D.N.Y. 1989) is misplaced. There, the plaintiff/property owner sought a declaratory judgment that the agreement entered into by its agent/property manager and a union entity was null and void based on lack of authority. The facts upon which the District Court found apparent authority are readily distinguishable. First,

8

the Court based its finding on the testimony of the union's representative that it was custom in the industry that real property agents could bind property owners to contract with unions.   Here, this Court has been provided with nothing more than Copple-Litt's attorney's self-serving, conclusory and unqualified statement that, "[t]he general public understands that an insurance agent is the agent of the insurer and binds the insurance company." *See* Copple-Litt Br. At p. 19. Next, the *Property Advisory* Court cited to the plaintiff's failure to react to the contract at issue. Here, Northwestern had no opportunity to take action with regard to the Form, because it indisputably never received the Form until after the Decedent's death.   Next, the District Court held:

> One who deals with an agent does so at his peril, and must make necessary effort to discover the actual scope of the agent's authority.   A party claiming reliance on an agent's apparent authority must not fail to heed warnings or inconsistent circumstances.

The Court held there were no inconsistent circumstances which would have alerted the union to the fact that the agent was prohibited from binding the property owner to contracts with a union. Here, the Policy itself (which the Decedent clearly had access to) is entirely inconsistent with any alleged apparent authority on Elmaleh's part to change the terms of the Policy, as the Policy clearly states that any change to the Policy must be received by Northwestern's "Home Office." Finally, the District Court held that the union relied on the apparent authority of the property owner's agent.   Conversely, here there is absolutely no evidence (aside from the inadmissible and inconclusive Confirmation) that the Decedent acted in reaction to the alleged apparent authority of Mr. Elmaleh.

Accordingly, Elmaleh had no apparent authority to change the beneficiary of the policy.

### C.   Elmaleh Indisputably Never Received the Form

Even if Elmaleh had authority to change the beneficiary on the Policy, Elmaleh has admitted in a sworn statement that neither he nor, to his knowledge, anyone at the Blumberg Group, ever received a copy of the allegedly completed Form.   Within his affidavit, Elmaleh states:

> Prior to October 9, 2012, I had never seen the executed Form. I (and to my knowledge Blumberg Group) never received the purported fax confirmation of the purportedly executed form.

> If I had received such form, I would have immediately filed the Form with the home office consistent with my regular practice.

*See* Elmaleh Aff., ¶¶12 and 13.[3] At trial, Elmaleh will testify consistently with his affidavit.

### D.   The Confirmation is Inadmissible

The only purported evidence proffered in support of the proposition that the Form was received by Elmaleh, the Confirmation, is inadmissible absent an appropriate trial witness. This Court has held that facsimile transmissions are hearsay statements that must be properly authenticated before they are admitted into evidence.   For example, in *Hill v. Citibank Corp.*, this Court held "there is no basis for treating the 'fax header' as reliable, and it would be inadmissible at trial as hearsay-an out of court statement offered for the truth of the matter asserted-that does not fall under an established exception," 312 F.Supp.2d 464 (S.D.N.Y. 2004) (citing Fed.R.Evid. 801(c), 802; *Total Containment, Inc. v. Environ Prods., Inc.*, 921 F.Supp. 1355, 1370 (E.D.Pa.1995)(ruling that "the fax burn-in is insufficiently trustworthy ... to be admissible to establish the date of [the] document" and thus finding residual hearsay exception, Fed.R.Civ.P. 803(24), inapplicable), *aff'd in part and vacated in part on other grounds*, 106 F.3d 427, 1997

---

[3] Tellingly, despite seeking and receiving an extension of the discovery deadline in this action in order to take the deposition of Elmaleh, Copple-Litt chose not to do so.

1585194_4

WL 16032 (Fed.Cir.1997).   Similarly, the Second Circuit affirmed a denial of summary judgment where a party opposing summary judgment was relying upon a fax.   *Kam Hing Enterprises, Inc. v. Wal-Mart Stores*, Inc., 359 Fed.Appx. 235 (2d Cir. 2010).  The Court held that because the identity of the fax was not the subject of testimony by anyone with personal knowledge, and because it contained no internal indicia of reliability, it was not properly authenticated under Fed.R.Evid. 901. The trustworthiness of such a document must be established through the testimony of a person "who can explain a business' procedures for compiling information and methods for checking for mechanical and human error; explain the operation of the machine and testify that the machine properly did what it was supposed to do; and testify as to the mechanical reliability of the machine." *People v. Hagan*, 145 Ill.2d 287, 310, 583 N.E.2d 494, 504 (Ill.,1991) (citing *Tapper, Evidence from Computers*, 8 Ga. L. Rev. 562, 595 n. 193 (1974)).

Here, to date, the fax has not been authenticated by anyone from Lehman Brothers and there is no evidence of checking for mechanical and human error, the operation of the machine, that the machine properly did what it was supposed to do and about the reliability of the machine.  Accordingly, it is inadmissible and, absent an appropriate trial witness, cannot be relied upon to support the proposition that Elmaleh received the Form.

### E.    The Confirmation Should not be Assigned any Evidentiary Value

Further, even if the Confirmation is held to be admissible, it should not be assigned any evidentiary value.  Courts will disregard the evidentiary import of a fax where there is insufficient evidence to substantiate its contents. *Babcock v. New York State Office of Mental Health,* No. 04 Civ. 2261, 2009 WL 1598796, at *16 (S.D.N.Y. Jun. 8, 2009)(Disregarding evidentiary import of fax cover sheet where insufficient evidence existed).  Here, no cover sheet was produced for the materials allegedly faxed and it cannot be determined: (i) where the fax

11

was sent; (ii) who sent the fax; and most importantly (iii) what documents were allegedly faxed from Lehman Brothers.  The only evidence provided regarding the Confirmation is Elmaleh's sworn statement that he never received the Form.  Accordingly, the Confirmation is completely unsubstantiated and untrustworthy and should be disregarded.

Copple-Litt alleges that the Confirmation establishes that a Network Office Block/Transfer request form was faxed that states Decedent "would like to change the beneficiary on my policy to Tracy Copple."  Copple-Litt Br., p. 2.   Aside from not being properly authenticated, the Confirmation, in fact only shows the top half of the alleged referenced Network Office Block/Transfer request.  It does not reveal the language cited by Copple-Litt and it is entirely unclear whether the bottom half of the allegedly faxed page, which allegedly contained the language cited by Copple-Litt, actually was faxed or contained this language.  Further, Northwestern's internal policies and procedures and testimony indisputably show that a Network Office Block/Transfer request is unsatisfactory for the purpose of changing a beneficiary.  Junemann Tr., Exhibit A to Saurack Aff. at 30:22-31:11.

**F.     The Confirmation Does Not Raise a Presumption of Receipt**

Additionally, even if the Confirmation was properly authenticated and evidenced that the Form was faxed to Elmaleh, the Confirmation does not raise a presumption of receipt. Copple-Litt concedes that this Court has not ruled upon whether the "mail-box rule" applies to faxes, but fails to cite cases from other jurisdictions that hold that a fax does not raise a presumption of receipt. *See Riley & Ephriam Constr. Co. v. United States*, 408 F.3d 1369, 1372 (Fed. Cir. 2005) ("[W]e cannot infer receipt from evidence of transmission.  Proof of message exit from a transmitting machine cannot serve as a proxy for proof of actual receipt of the sent message by a remote receiving terminal."); *In re Gunter, 389 B.R. 67, 73* (Bkrtcy. S.D. Ohio

2008) ("Unlike the "mailbox rule," evidence of transmission of a document by fax . . . does not create a presumption of receipt.").

Additionally, Copple-Litt cites to the 7th Circuit's holding in *Laouini v. CLM Freight Lines, Inc.* for the proposition that the existence of a fax confirmation at least creates an issue of fact as to whether the facsimile was actually received. *See* Copple-Litt Br. At p. 9. However, the *Laouni* holding is readily distinguishable from the case at hand. In *Laouini*, the plaintiff/appellant argued that his EEOC charge of discrimination was received by the EEOC within the statutory deadline. The subject fax confirmation from plaintiff's attorney's office demonstrated that the facsimile was sent on April 12, 2007. However, the EEOC's records indicated that they received the facsimile on April 16, 2007 (after the expiration of the deadline). *See Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 474 (7th Cir. 2009). In other words, there was no issue as to whether the EEOC received the facsimile. Here, the alleged recipient of the Form, Elmaleh, has submitted sworn testimony that he never received the Form. Moreover, the *Laouini* Court held:

> Although fax confirmations may not always be conclusive proof of receipt, we believe that in this case-*where it is not the plaintiff who has to prove receipt, but the defendant who had to prove the absence of receipt –* the fax confirmation creates a factual dispute sufficient to preclude summary judgment.

*Id.* at 477 (emphasis supplied). Conversely, here, it is Copple-Litt's burden to prove receipt in order to support her allegation of substantial compliance. As such, the *Laouini* holding does not support Copple-Litt's argument.

Accordingly, the Confirmation is inadmissible, should be assigned no evidentiary value, and/or raises no presumption that the Form was faxed to Elmaleh. As a result, even under Copple-Litt's interpretation of the Policy, *i.e.* receipt by Elmaleh of the Form was sufficient to

change the beneficiary on the Policy, her claim fails, and Litt should be awarded the death benefit.

### POINT II.

### DECEDENT DID NOT SUBSTANTIALLY COMPLY WITH THE POLICY'S PROVISIONS CONCERNING CHANGING BENEFICIARIES

Copple-Litt also attempts to invoke the doctrine of substantial compliance to argue that Decedent substantially complied with the Policy's change of beneficiary provisions by sending the Form to Elmaleh in 2005. However, as discussed below, Copple-Litt admits that Decedent failed to take all steps within his power to change the beneficiary to Copple-Litt after being notified on multiple occasions that the change had not been made in September 2005.

Copple-Litt concedes the relevant legal standard in determining whether a decedent substantially complied with a Policy is whether the insured "took an affirmative act or acts to accomplish a change of beneficiary, and these affirmative act or acts ... accomplished all that it was in [the insured's] actual power to do to change beneficiaries.'" *See* Copple-Litt Br., p. 14, (*citing Sun Life Assur. Co. of Canada (U.S.) v. Gruber*, 2007 WL 4457771, at *18 (S.D.N.Y. 2007). *See also McCarthy v. Aetna Life Ins. Co.*, 704 N.E.2d 557 (N.Y. 1998). The intent of the insured "is the key to the inquiry, but proof of intent alone is not enough: the insured's intent must have been thwarted by circumstances beyond his or her control." *Id. (citing Schoenholz v. N.Y. Life Ins. Co.*, 234 N.Y. 24, 29-30, 136 N.E. 227 (1922); *Conn. Gen. Life Ins. Co. v. Boni*, 368 N.Y.S.2d 1, 3 (App.Div. 1975). The insured must have done "all that was reasonably

possible to do to show his intention" or have made "every reasonable effort to comply with the policy requirements." *McCarthy*, 92 N.Y.2d at 440.[4]

   Here, Copple-Litt admits that Decedent did not take every reasonable step to comply with policy requirements.  She admits that in November 2007, Decedent "apparently realiz[ed] from the annual policy statement he was sent that the beneficiary had in fact not been changed," (Opp. Br., p. 16), and yet did not re-send his application to Northwestern, fill out a new application or take any action to change the beneficiary to Copple-Litt.  She also admits that Decedent admitted his beneficiary designations were not up to date in or about 2008 (Opp. Br., p. 16-17), yet took no action to change the beneficiary designation on the Policy to Copple-Litt.  Additionally, Copple-Litt cannot deny that the Decedent did not file a new Form even though approximately a week after he allegedly faxed the Form to Elmaleh, Northwestern sent him a letter stating that it had not received the completed Form.  Decedent did not file a new Form even though he knew from the same letter that he was supposed to receive an acknowledgment letter, but indisputably never received one.[5]

----

[4] Copple-Litt cites *Union Cent. Life Ins. Co. v. Berger*, in support of her substantial compliance argument. 2012 WL 4217795 (S.D.N.Y. Sept. 20, 2012).  Copple-Litt Br., p. 14.  *Union Cent. Life Ins. Co.* by her own admission, however, is inapposite.  As she notes on p. 14 of her brief, in *Union Cent. Life Ins. Co* the decedent received two letters confirming that a change of beneficiary had occurred.  Here, the Decedent indisputably was sent no acknowledgment.  *Cable v. Prudential Ins. Co*, 89 A.D.2d 636, 453 N.Y.S.2d 86 is distinguishable because, as Copple-Litt notes in her brief at p. 15, the decedent filed to mail a policy to his insurer for endorsement because he was killed the day before he told his agent he would send it to Prudential.  Here, after reviewing the notice that his brother was still the beneficiary on the Policy, Decedent had years to send the Form to Northwestern's Home Office, but failed to do so.  Further, in support of the alleged "abundance" of New York case law which allegedly supports Copple-Litt's theory of substantial compliance, she first cites to the 1902 holding in *Fink v. Fink*, 171 N.Y. 616, 64 N.E. 506 (1902).  As an initial point, *Fink* did not involve a life insurance policy, but rather an employee benefit association.  More importantly, the holding in *Fink* entirely undermines Copple-Litt's argument.  Indeed, in *Fink* the New York Court of Appeals held that the decedent had <u>not</u> substantially complied with requirements of the subject plan when the change of beneficiary form he mailed had <u>not</u> been received by the association before the decedent's died.  "When the member died, he had not executed the power, for the association had no knowledge of his intention or attempt to make the change and was, therefore, under no liability to the plaintiff, because her title was not perfected in accordance with the contract."  *Id.* at 623-624.

[5] Copple-Litt also claims that Decedent previously promised her that he would name her as the beneficiary on the Policy and confirmed that he made the change.  Aside from not changing the fact that Decedent indisputably

All of these facts are either admitted or indisputable and Decedent plainly did not accomplish "all that it was in [the insured's] actual power to do to change beneficiaries.'" *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F.Supp.2d at 366 (citing *Sun Life Assur. Co. of Canada (U.S.) v. Gruber*, 2007 WL 4457771, at *18, 2007 U.S. Dist. LEXIS 92141, at *56 (S.D.N.Y. 2007). *See John Hancock Life Ins. Co. v. McManus*, 247 A.D.2d 513, 669 N.Y.S.2d 320 (2 Dept.,1998)(Although the insured was advised that the initial form she returned was unacceptable and a new form was sent to her to complete, she failed to fill out and return the new form in the month before her death, even though completion of the new form was within her power to accomplish). Decedent was well aware that the beneficiary designation had not been changed to Copple-Litt, but indisputably and admittedly failed to take all steps within his power to effectuate the change.[6] Under these circumstances, Litt should be awarded the death benefit on the Policy.

---

did not take all steps within his power to change the beneficiary on the Policy, Decedent's statements are inadmissible under the Dead Man's Statute. "If a witness is interested and her testimony involves a personal transaction with the decedent, her testimony with regard to that transaction is inadmissible." *Rosenfeld v. Basquiat*, 78 F.3d 84, 88 (2d Cir. 1996). As the Defendant, Ms. Copple-Litt clearly is an interested party in this proceeding her testimony must be excluded from evidence pursuant to the Dead Man's Statute. "

Additionally, Copple-Litt claims that Sarah Miller e-mailed a change of beneficiary form to Decedent on September 29, 2005. Copple-Litt Br., p. 5. This e-mail was never authenticated or established as a business record by Elmaleh or Northwestern, which is unavailable for trial (Saurack Aff., Exh.B), and should not be considered by the Court.

[6] Copple-Litt's claim that Litt would be unjustly enriched if awarded the death benefit (Copple-Litt Opp. Br., p. 11) is wholly unsupported by any evidence in the record and does not specify the source of monies in Copple-Litt's and Decedent's joint account, *e.g.* whether Decedent funded the account.

Further, it is not at all surprising that Decedent never changed the beneficiary on the Policy to Copple-Litt. The Court in assessing Decedent's intent to change the beneficiary on the Policy should consider evidence that Copple-Litt and Decedent enjoyed, at best, a tumultuous six (6) year marriage. She admits that for the majority of the time that they were married, including at the time of the Decedent's death, Decedent and Copple-Litt did not live together. *See* Copple-Litt Tr., Exhibit E at 19:24 – 21:24; 22:10-14. She admits that she struggled with alcohol, was treated at Alcoholics Anonymous and was arrested twice for driving while intoxicated. *Id.* at 58:11-13; 59:7-15; 59:23-60:6; 62:23-64:12. Lastly, she admits that Decedent did not ask her to attend family functions and events, including visiting Decedent's ill mother and his father's funeral. Id. at 29:8-31:11.

1585194_4

## CONCLUSION

In sum, evidence at the trial of this matter will show that Steven Litt is the beneficiary on the Policy and should be awarded the Policy's death benefit, which is deposited with the Court, plus accrued interest and any other relief the Court deems just and proper.

Dated:  New York, New York
January 25, 2013

SATTERLEE STEPHENS BURKE & BURKE LLP

By: _____
Walter A. Saurack
Michael H. Gibson
230 Park Avenue – Suite 1130
New York, New York  10169
(212)  818-9200
*Attorneys for Defendant – Steven Litt*

17